OPINION of the Court, by
judge Bibb.
— In 1782 William Buford became the security of James Buford, whereby he was compelled to pay the sum of £. 1333 *306 in the year Í800 ; in the same year he recovered juág* ment against his principal for the sura so paid, but never sued execution.
A chofe in a£lion is not iubject to be taken in exe-
.Equitable in-terefts in lands are not liable to be taken in execution*
At law, the bond of C. to I» could not be taken in execution tofatis-. fy I’s debt nor the land described int he bond.
Equity cannot conftrue a fta-tute ohmvife than a court of law can.
Legal eftates only are fub-je&ed by our ftatute to the payment of stebts*
In 1785, James Calloway gave his obligation to David Beard for the conveyance of seven hundred acres of land, which obligation was passed to James Buford b}' delivery only, who caused Calloway to make deeds with special warranty to purchasers or pretended purchasers from James Buford.
William Buford, the creditor, exhibited his bill against his debtor, against Calloway, and against the purchasers, charging a combination ; that the purchases were fraudulent ; and praying that Calloway may be compelled to make a general warranty ; that the land may be sold to satisfy the debt, inasmuch as James Buford was insolvent, or had not property other than the land sufficient to satisfy the debt; the deeds were made (to the purchasers) pendente lite.
Upon the statements in the bill, two questions are presented.
1st. Was the claim of James Buford subject to satisfy the judgment, in case William Buford had sued out his execution and put it into the hands of the proper officer ?
2dJ.y. Can a court of chancery make it subject to the debt?'
. Considering the claim of Buford either as a chose in action, or in nature of a use or trust held by Calloway for said Buford’s benefit, it was equally beyond the reach of execution. The doctrine is well settled that a chose in action, is not subject to be taken in execution. As a mere covenant therefore the obligation on Calloway could not be liable to the writ of execution. In an equitable point of view it is equally beyond the reach of the sheriff or other officer of the law. Before our statute subjecting lands to the payment of debts, they csuld be reached by the writ of elegit, or of levari facias, but uses could not be extended by either of these, or by other legal process, before the statute of uses, which converted them into legal estates. And it is equally clear that the statute only operated upon uses declared by deeds, properly so called, but not upon mere obligations, covenants, or agreements for land. These still remain but chases in action, which may compel the sub *307 ject in specie, or may only sound in damages. That the “ act subjecting lands to the payment of debts” does not reach mere equitable estates was decided in Thomas vs. Marshall (a). According to the exposition given to the statute in that case, “ bonds and contracts for land, or the land therein described, are not subjected by the said act to be sold, more than bonds and contracts for a specific chattel or ar.y other chose in action.” By that decision the words of the statute are confined to legal rights only.
Equity cannot fubject a fund not liable by law to the payment of debts*
A bill in c-quity will not lie on behalf a creditor to compel his debtor to convert a chofe irv a&ion into an eftate in possession, or a covenant Teal into ¾ legal title.
The point being settled, that at lau> the obligation which James Buford held on Calloway, could not have been taken in execution, nor the land in the said bond described, it remains to enquire if a court of equity can go beyond the law, and create a new right. Equity cannot construe a statute otherwise than a court of law can, Both courts are bound by the same rules of construction, insomuch it is a maxim that “ equitas sequitur legemT Equity will-remove impediments which are in the way to legal rights ; and will give redress where according to the forms of procedure at law, the complainant might have a right without a remedy, or where that remedy would be incomplete. Equity will enforce a recognized right, in a maimer unattainable at law, but it cannot create a right unknown to the law.
What right then had William Buford, upon which he could bottom his complaint in chancery ? At law he could have no lien, upon his debtor’s property, by virtue of his judgment, until his writ of execution was delivered to the proper officer ; but even after delivery he could have gained no lien thereby on the land or the bond which is the subject of the complaint,. The application therefore is not to enforce a right recognized by law, but to create one and give a lien unknown to the law. Equity cannot sustain the prayer of the creditor upon the suggestion that his debtor has but an individual piece of property, and that his debt must remain unpaid unless the law shall be transcended and that property made liable, if the chancellor is not circumscribed by the rules of law which enter into and constitute the right, \vhat is to limit his discretion l If he can seize the bare circumstance of a debt as the foundation of the bill, and create a privity or a lien, where the law has given none, indeed it might be said that iustice was to be mea» *308 surec] foy the chancellor’s foot, his power by his appetite⅛ and his range illimitable. A bond for land gives no vested right to the land. It is but a right to ask for the subject or damages by way of compensation for not complying with that right. It is but a chose in action, which execution cannot reach, and which equity cannot reach in behalf of a creditor, without a privity created by the parties or by the law. The insolvency of the debtor can furnish no ground for the interposition of the chancellor, when in so doing he does not follow, but outgo the law. As well might the creditor ask, that his debtor who was destitute of property, should be compelled to labor and suffer the creditor to receive the proceeds. And yet it is believed the chancellor could exercise no such power, although the law had given the creditor an execution against the body of the debtor.
The proceedings in behalf of creditors against absent debtors, their property, garnishees, agents or factors, are given by statutes, as remedial of defects in the law as it stood before the statutes.
Upon the whole we consider that a court of chancery has no power to create a fund,not liable by law for the payment of debts, and that a bill in equity will not lie on behalf of a creditor to compel his debtor to convert a chose in action into an estate in possession, or a covenant real into a legal title. As the creditors could have had no demand upon the bond given by Calloway to Bean and purchased by James Buford, the transfer of that bond in the whole or in parts, could not be a fraud upon a creditor.-Decree reversed.

 Hard. 19.