Opinion of the Court, by
Judge Logan.
These are cross appeals from a decree pronounced on the following case: Hubbard having a judgment at law for upwards of £300 against Micajah Roach, who having departed this life, letters of administration were granted to his widow and son, against whom, and the heirs of Roach, Hubbard exhibited his bill in equity, for the purpose, first, of a discovery of assets; and secondly, to subject a certain lot in Bardstown to the benefit of his debt. The court below decreed against the administratrix $1,249 63, with interest on that part of the principal remaining unpaid, and dismissed the bill as to the other defendants.
As respects the administratrix, the sum decreed against her certainly very far exceeds the assets which appear to have come to her hands. The bill admits the receipt of the following sums: $105 in June 1805; also, $125 56; also, 19 90, and also $96 through Walter Brashears, amounting in all to $346 46. And the administratrix, in her answer, states that the $125 56, and the $19 90, were paid to the complainant on the amount of the sales of the personal estate, and that no other assets have come to her hands; but admits that during the life of her husband, she received from him money, which he transmitted from Natchez, amounting to $270; and avers that $105 of that sum was paid to the complainant.
It may be proper here to observe, that there is no evidence in the cause contradictory to the statement in the answer, that a horse sent from Natchez, of the value of about $60, may have formed a part of the sums which were paid to the complainant, inasmuch as the administratrix avers those sums to be the amount of the sales of the personal estate; and that with regard to $100 proved to have been paid at Natchez to Warner Roach, who was one of the administrators of Micajah Roach, there is no proof that this money ever came to the hands of the administratrix; and without evidence of her having received the same, she cannot be made liable therefor; for one administrator is not answerable for money which never came to his hands, but was received by a co-administrator.
*236 And if the administratrix has been held liable for the rents of the house and lot whereon she lived, it was improper. As administratix she was not entitled to the rents and profits of the real estate; and as the widow of the intestate she was entitled to the possession of the dwelling-house, until the assignment of dower.
These remarks have been made upon the supposition that the sum decreed against the administratrix has been drawn from that source; because we are otherwise totally at a loss to perceive the ground upon which that sum has been ascertained as having come to the hands of the administratrix. The only proof against the administratrix, for money which came to her hands, not reconcileable with her answer, is as to the sum transmitted to her by her husband from Natchez; and the evidence in relation to that sum, proves only, that 300 or 350 dollars were sent, and of that sum about $13 were taken out. But whether the full amount was paid by the bearer of the money to the administratrix, the witness does not speak positively, though he leaves strong ground for that inference. As, however, the administratrix is called upon for a discovery of assets, and she has stated upon oath the receipt of $270 only, as transmitted from Natchez, her statement, when opposed in this respect by the evidence of a single witness, must be taken as forming the proper data upon which to decree against her. Whether this sum came actually to hand before or after the death of the intestate, we apprehend, can make no material difference in this case, since it appears to have been about that time; and there is no evidence of the money having been applied to any purpose whatever, except the $105 paid to the complainant; and, therefore, she ought to be considered as possessed of so much money belonging to the estate of the intestate. This would leave in her hands, unadministered, the sum of $165; and for this sum only, we apprehend, the administratrix is accountable. Strange, indeed, if the administratrix possesses assets to the amount of $ 1,249, that the complainant has not been able to find more of the estate with his executions. But, be this as it may, we are of opinion that the evidence in the cause does not show assets to that amount, and that the decree of the circuit court is therefore erroneous.
*237 With respect to the decree in dismissing the bill as to the heirs and Hill, who was also a defendant, we come next to examine. This brings into view the ground set up for making the house and lot liable to the judgment of the complainant. It appears that the intestate had purchased this property, and obtained a deed for the same from Benjamin Frye; that Frye was indebted to Atkinson Hill, to whom Roach was to have made payments; but the title at law not being in Frye to this lot, but being in John C. Owings, Hill purchased from Owings and obtained the right, and then, by an agreement with Ruth Roach, the present defendant, sold and conveyed to her, in her own right, for a consideration stipulated to be given by her. It is true, the title papers are not exhibited, and it is only inferable from other evidence in the cause, that such was the state of facts. That the legal title was not in Roach, the intestate, is evidently to be inferred; for if it had been, then whence the necessity of the complainant’s resorting to a court of equity? Why not levy his execution on the property? Upon this view of the case, then, he could have no ground for coming into chancery, and his bill would have been properly dismissed. But if, as we have supposed, the legal title was in Hill, whether it was held adversely to the purchase under Frye, or whether Owings might have been compelled to surrender to an equity in favor of Frye, derived under his claim, cannot be material in this suit. If it might have been held independent of Frye’s right, then surely Hill, deriving title under it, could convey to Mrs. Roach, as well as to any other person, free from the debts of her intestate; and if the legal title were held subject to a superior equity in Roach, then, whatever claim the heirs of Roach might have had for coercing it from Owings, from Hill, or from Mrs. Roach, still it is perfectly clear, according to the decision in the case of Buford vs. Buford,* that equity cannot make it liable to execution, when by law it was not liable; and the bill, as to the heirs and Hill, was properly dismissed.
The decree, so far as it exceeds the sum of $165, with interest and costs, against the administratrix, must be reversed with costs; and as relates to the heirs and Hill, be affirmed with costs.

 1 Bibb 305.