Dissent of
Judge Mills.
THE main question decided in this cause, is, ought an outstanding equity to be enforced against a purchaser of the legal estate, under execution issued against the legal title-holder, the purchaser having notice of that equity?
As this is the first time the question has been decided by this court, and as it has an important bearing on the laws subjecting land to the payment of debts, and on the numerous sales made under these laws, and as I differ from a majority of the court in the decision just given, I have thought proper to deliver my reasons for that dissent.
I conceive the first section of the act entitled “an act to reduce into one the several acts or parts of acts for regulating conveyances,” 1 Litt. 565, and the several acts subjecting lands to the payment of debts by fieri facias, ought to be construed together, as acts in pari materia, relating to the same subject-matter; and I am unable to see any reason why they should not be so con *364 strued, while I perceive every reason for such construction. Could any stranger look into our code, and see that the first act declares that “ no estate of inheritance or freehold, or for a term of more than five years, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered; nor shall such conveyance be good against a purchaser for a valuable consideration, not having notice thereof, or any creditor, unless the same writing be acknowledged by the party,” or proved as the act requires, and then discover another statute subjecting lands to the payment of debts by fieri facias, and not suppose that one of these statutes has an important bearing on the other? It is difficult to suppose how the first act can have its full operation, when a writing not sealed, not recorded, nor deposited to be recorded, in the pocket of the individual, can, through the intervention of a court of chancery, overset the sale, and take the estate from any creditor, whether with or without notice. The words are emphatic, “ any creditor,” opposed to the purchaser without notice. How, then, can the chancellor say that the creditor with notice shall be affected, without relieving against the letter of the act? It is true, this act was adopted in Virginia, while lands were only subject to elegit; but if the legislature afterwards thought proper to subject them to another procedure, and did not exempt them, in the new remedy, from the former act, it will have a bearing on the latter remedy also. A deed of conveyance, acknowledged or witnessed, and not deposited to be recorded, or improperly placed on record, has, I conceive, in the cotemporaneous construction of the act, not been deemed valid against a fieri facias. How, then, can an instrument of less validity, of less force, either in law or equity, an executory contract only, be effectual? It may be said, that the first passes the legal estate, and is executed, while the latter passes an equity only. To this it may be replied, that the first described instrument passes the equity also and more; and the major will include the minor. If an instrument passing the equity only, can be enforced, I see no reason why an unrecorded deed may not be valid against a sale under a fieri facias, not only in equity, but also at law. If the statute first recited does not destroy the effects of unrecorded deeds or bonds upon sales under *365 execution, then it has no effect, except upon an elegit, and the necessity of recording deeds, to give creditors notice, where the title resides, is rendered measurably inoperative.
It has been repeatedly settled by this court, in a class of cases too numerous to be recited, that only a legal estate, and not an equity only, can be sold by fieri facias. It would seem at once to follow, that the legal estate could be sold, taking the equity with it, while the holder of that equity would be left to feel his own laches and folly, in trusting the title in danger, when he might have had it securely in himself. If this is not the case, then, according to the class of cases noticed, and the decision just rendered, a large portion of the landed estate of the country is exempted from sale altogether. All the lands, where the legal title is in one, and an equity in another, cannot be touched. The interest of the holder of the equity cannot be sold, because he has not the legal estate; and the legal estate cannot be sold, because there is an outstanding equity; or, if it can, the sale is an useless ceremony; for the purchaser under the execution must surrender all he got, at the decree of the chancellor, if he has heard of that equity. Thus, this equity, which cannot be touched by the execution itself, is valid against its operation, and the act subjecting lands must be measurably inoperative, on some lands at least, when the legislature must have intended that all lands held by individuals should be subject in the hands of some person.
As arguments arising ab inconvenienti, and the lack of policy in a decision, are entitled to some weight, I cannot conceive of a more facile mode of placing land beyond the reach of creditors, than that of placing the legal estate in the hands of one, and the equity in another. The equity-holder is safe; for his estate cannot be touched, nor will a court of chancery, according to the decision of this court in the case of Buford vs. Buford, 1 Bibb 305, compel him to bring his title into reach; and he runs no risk from the debts of his vender, for if his estate is sold, it is only to give notice to the purchaser in time, and make him surrender it. Thus, both are safe, while one of them enjoys the estate, and the creditors of both remain unpaid. Thus land, said to be a fund for the payment of debts, and an inducement to credit, is easily put beyond the reach of the *366 strong language of the legislature in one act, which says, they may be sold in satisfaction of all judgments; and in another, which in effect declares that nothing but a recorded deed of conveyance shall protect them against “ any creditor.”
However much I may regret a difference of opinion on a point so important, and however strongly I may be inclined to distrust my judgment with such a weight opposed to it, yet it is not without some degree of confidence, that I dissent from the opinion of my brethren on this subject.