MODISETT
v.
JOHNSON.

MODISETT and Another *v.* JOHNSON and Others.

A judgment is no lien on land, which the debtor holds by a bond conditioned for the execution of a title on payment of the purchase-money, though he had taken possession and paid the money before the rendition of the judgment; and a sheriff's sale, on execution against the obligee, of land so held, conveys no estate to the purchaser.

The statute of frauds, authorising the sale of lands on execution against a *cestui que trust*, does not extend to the equitable interest possessed by the obligee of a title-bond.

Upon an application to a Court of equity, for a specific execution of a contract for the sale of land, the Court must be satisfied that the claim is reasonable and just, and the contract equal in all its parts, and founded on an adequate consideration. If any of these points be not established by the complainant, he will be left to his remedy at law.

| 2b 431 |
| 127 291 |
| 2b 431 |
| 141 168 |
| 141 263 |

APPEAL from the *Vigo* Circuit Court.—Bill in chancery by *Johnson* and others against *Modisett* and *Clarke*. Decree of the Circuit Court for the complainants.

*Tuesday,
November 8.*

STEVENS, J.—The facts in this case, as exhibited by the bill, answers, exhibits, depositions, and record, are substantially these:—

In *May*, 1824, judgment was rendered in the *Vigo* Circuit Court against *Charles B. Modisett*, the debtor, and *Thomas H. Clarke* his surety, in favour of *Cuthbert Bullitt*, surviving partner of the late firm of *C. & T. Bullitt*, for the sum of 847 dollars and 82 cents; which judgment was replevied, under the statute, by *John M. Coleman*. In *May*, 1825, a writ of fi. fa. issued, and was levied by the sheriff of the county on some of *Modisett's* personal property, which sold for 159 dollars and 50 cents; and, at the same time, the sheriff levied the same fi. fa. on 5 out lots and 24 in lots of the town of *Terre-Haute*, in the county of *Vigo*, as the property of *Modisett*, among which were the lots in question in this case, to wit, in lots 18, 248, and 286, and out lots 42, 26, and 15, all of which lots were returned not sold. In *July*, 1825, a venditioni exponas issued and all said in and out lots, except one in lot numbered 257, were sold by the sheriff for the sum of 39 dollars and 60 cents. The in lots 18, and 286, and the out lots 42, 26, and 15, were purchased by said *Daniel H. Johnson* and one *Robert Wilson* for 21 dollars and 62¼ cents, and the in lot 248 was purchased by one *Edward Mod-*

Nov. Term,
1831.

MODISETT
v.
JOHNSON.

*den* for one dollar, which lot the said *Madden* afterwards sold to. said *Johnson* and *Wilson.*

At the time those lots of land were levied on and sold, they were in the possession of *Modisett,* and held by him by bonds on the proprietors of the town, conditioned for the conveyance by deed of the lots when the purchase-money should be paid. *Modisett* had no deeds for said lots or any of them. The purchase-money on in lots 248 and 286, and perhaps on out lot 42 was paid, but the purchase-money for in lot 18 and out lots 26 and 15 was not paid. Before the sale of any of the lots took place, *Modisett* offered to give up to the sheriff in lieu of said lots, goods and chattels worth at least 1,700 dollars; and he showed the sheriff a schedule of the goods and chattels, and offered to give good bond and security for the delivering thereof on the day of sale; and the sheriff refused to receive them, stating that he should first sell the lots, as they had been shown to him by the plaintiff's attorney, Mr. *Farrington.* On the day of sale of the lots, before any of the lots were sold, *Modisett* publicly informed all the persons at the sale, that he had offered goods and chattels in lieu of the lots, and that the sheriff had refused to take them, and that he had no title to the lots, and hoped no person would buy them, as he did not wish any person to pay money for him for nothing. And after the sale was over, and before any money was paid to the sheriff, *Modisett* again informed those who had purchased, that he had no title and that he did not wish them to pay money for him for nothing, that if they would relinquish their bids he would pay the amount to the sheriff. Many of the purchasers did relinquish their bids, and *Modisett* paid the amount of those bids so relinquished. But *Johnson, Wilson,* and *Madden,* refused to relinquish theirs; paid their own bids; and took deeds from the sheriff for the lots they had purchased, being the lots now in controversy. The whole of the lots levied on and sold were, at the time of the sale, worth upwards of 1,200 dollars, and in 1829 were worth 2,800 dollars; and in lots 18, 248, and 286, and out lots 15, 26, and 42, were at the time of the sale worth 105 dollars, and, in 1829, were worth between 500 and 600 dollars cash in hand. And *Modisett* and his replevin-surety, *John M. Coleman,* were each solvent, and had a sufficiency of both real and personal property to pay the amount of the exe-

cution on which those lots were sold. In 1826, *Thomas H. Clarke* purchased of *Modisett* the in lot 286, and out lots 15, 26, and 42, for 430 dollars, and took an assignment from *Modisett* of the title-bonds on the proprietors of the town for deeds, from whom he has since received deeds for the out lots, but not for the in lot. At the time of the purchase, *Modisett* put *Clarke* into possession, which possession he still holds, and the lots have been much improved since the sale thereof by the sheriff, both by *Modisett* and *Clarke*.

The complainants allege in their bill, that all the lots levied on and sold were paid for at the time of the sale, and that *Modisett* was at that time entitled to deeds therefor, and that he neglected and delayed taking deeds for the purpose of defrauding his creditors. They further allege, that *Clarke* had full notice of the premises, and that the sale from *Modisett* to *Clarke* was and is voluntary and fraudulent, and was made for the purpose of defrauding the complainants out of their rights, and pray the Court for special and general relief. *Modisett* in his answer expressly denies, that he delayed and neglected perfecting his title to those lots for the purpose of defrauding his creditors; but says that he was not entitled to deeds for any except three; and that for the purpose of saving expense, he wished all his lots to be conveyed by one deed, and was merely waiting until they all should be paid for, so as to include them all in one deed; that he was always able to pay his debts and did pay them. He also denies all fraud. *Modisett* and *Clarke* both expressly aver, that the sale and transfer by *Modisett* to *Clarke* of the aforesaid lots were *bona fide*, and for a valuable consideration; and that *Clarke* had no notice whatever, of any description, of the aforesaid sheriff's sale, or that there was any claim or incumbrance of any description on the lots, when he purchased and took the transfers and possession from *Modisett*. And they both deny, that the complainants have either a legal or an equitable title to either the possession or fee simple of the property. They also deny all fraud. It appears of record that *Robert Wilson*, the original purchaser at the sheriff's sale, is dead, and that *Martha Wilson* is his widow, and *Melinda Johnson* and *Ralph Wilson*, the above appellees, are his children and heirs, and are therefore admitted as parties to the suit.

The cause was heard in the *Vigo* Circuit Court, and a final

Nov. Term,
1831.

MODISETT
v.
JOHNSON.

decree rendered in favour of the complainants, requiring *Clarke* to surrender up possession to them of the out lots, and convey the same to them by deed, and also surrender possession to them of in lot 286, and transfer to them, by assignment, the title-bond on the proprietors of the town for a deed for the same; and that *Modisett* should surrender up possession of in lot 248, and transfer to them, by assignment, the title-bond on the proprietors for a deed thereto; and that *Modisett* and *Clarke* pay costs, &c.   To reverse which decree this appeal is prosecuted.

The complainants bottom their claim to the aid of a Court of equity, in part, upon a charge of certain intentional fraudulent acts of *Modisett*.   They allege that he neglected and refused to take deeds for the lots in question, from the proprietors of the town, for the purpose of defrauding his creditors.   This charge *Modisett* most positively in his answer denies, and accounts for the delay satisfactorily.   There is no evidence to sustain the charge, and the circumstances connected with the transaction, go very strongly to contradict the idea of such intention.   *Modisett* was solvent and finally paid off his debts, and was possessed of a large personal property, and also a valuable house, in all amply sufficient to pay his debts; all subject to be seized and sold at any moment.   And the judgment, for the satisfaction of which the lots in question were sold, was secured by replevin-surety, who was solvent, and who resided in the same place, and had more than a sufficiency of property to satisfy the execution at any moment, subject to be seized and sold whenever the sheriff pleased to take it.   Hence, *Modisett* could have neither interest nor inducement to endeavour to protect those lots from his creditors.

The charge of fraud being disposed of, the case presents for the consideration of the Court two questions.   First, had *Modisett* an interest in these lots at the time of the levy and sale thereof, subject to be seized and sold on an execution of fieri facias?   Secondly, if so, are the complainants entitled to the aid of a Court of equity, to perfect their possession and title to the same, under the whole circumstances and facts of the case?

At common law, equitable interests are not the subject of execution; but the 10th section of the act for the prevention of frauds and perjuries converts them into legal estates, and a

judgment at law is a lien and they become liable to execution.
*Buford* v. *Buford*, 1 Bibb, 305.—*Bogart* v. *Perry et al.* 1 Johns.
C. R. 52. This statute is copied from the *English* statute, and
only applies to those fraudulent and covinous trusts, in which
the *cestui que trust* has and enjoys the whole real and beneficial
interest in the land, and the trustee has the mere nominal,
naked, and formal legal title, vested in him for the sole and
only use and benefit of the *cestui que trust*. It is clear, howev-
er, that the statute only operates upon trusts declared by deeds
of conveyance properly so called. Such trust must arise from
some deed or conveyance. As if *A.* purchases land from *B.*
and pays for it with his own money, and *B.* deeds the land to
*C.*, there is a resulting trust from *C.* to *A.*, because *B.* the ven-
dor conveys for the use of *A.* the vendee. *Jackson* v. *Morse*,
16 Johns. Rep. 199. In such case, the statute which subjects
it to execution and sale, attaches the instant it is levied on and
sold, and executes the trust and converts it into a legal estate,
or, in other words, strikes the name of *C.* out of the deed, and
inserts the name of the *cestui que trust*, for whose use the deed
was made in the first instance. But until the contract with *B.*
was consummated by a conveyance, *A.* had no legal or execut-
ed estate entitling him to be regarded as seized. His right,
until it was merged in the deed to *C.*, was a mere chose in ac-
tion; and his remedy, had *B.* refused to convey, would have
been in equity to compel a specific execution of the contract,
or by a suit at law for his damages. Per Judge *Spencer*, in the
case of *Jackson* v. *Morse.*

It is essential from the very words of the statute to the con-
templated trust, that it should arise from a deed or convey-
ance. The statute never was intended to apply to a case,
where the trustee was not directly seized for the sole use and
benefit of the *cestui que trust*. *Bogart* v. *Perry et al.* 17 Johns.
Rep. 351.—*Botsford* v. *Burr*, 2 Johns. C. Rep. 414. After a
man has purchased land with his own money for his own use,
and takes a conveyance to himself, a subsequent purchase from
him of those lands cannot, by any retrospective effect, produce
the trust contemplated by the statute. It may be a good ground
for another kind of relief, but it cannot be that kind of a trust
which the statute, upon a seizure and sale under an execution,
executes and converts into a legal estate. The trust must be

Nov. Term,
1831.

MODISETT
v.
JOHNSON.

coeval with the conveyance, and cannot be raised by an after transaction. The provisions of the statute are, that on such sales the land shall be held and enjoyed, "freed and discharged of all incumbrance of the trustee;" which at once shows, that there must be a conveyance passed to some person for the use and benefit of the *cestui que trust*, or those holding under him cannot have the legal title vested in them, simply by the destruction of the trustee's legal title. There must be either an absolute legal estate, or an interest vested, known, and acknowledged at law, before a judgment at law can be a lien on it. A judgment at law is not a lien on a mere equitable interest in land, and an execution under it will not pass an interest, which a Court of law cannot protect and enforce. *Bogart* v. *Perry et al.* 1 Johns. C. Rep. 52.

The complainants have placed great reliance on three cases in *Wendell's* Reports, and one in *Cowen's*. 1. The case of *Forsyth* v. *Clark*, 3 Wend. 637. This case is not in its details directly in point, but the judge in his argument lays it down as a principle, that where the contracting parties, after a contract for the purchase of an estate, and the payment of the consideration-money, but before the execution of a deed, conspire together to defraud the creditors of the vendee, a Court of chancery may, on a bill filed by a creditor, grant relief. As there is no fraud or collusion in this case, charged between *Modisett* and the proprietors of the town of *Terre-Haute*, at or before the sale of the lots in question, the doctrine laid down in the case of *Forsyth* and *Clark* is not applicable. 2. The case of *Jackson* v. *Walker et al.* 4 Wend. 462. This is a case of trust within the statute, created directly by deed, and for a fraudulent purpose, and therefore cannot aid the complainants in this case. 3. The case of *Jackson* v. *Bateman*, 2 Wend. 570. This case may be thought to have some bearing upon the present discussion. The relief sought in the case, is similar to the relief sought in the one now under consideration, and Judge *Marcy*, in laying down what he thinks the true doctrine in such cases is, says, that there must be such a trust as the statute can execute and convert into a legal estate on which the judgment can be a lien, or it is not subject to execution. This is certainly the true doctrine, and it is in applying that rule, the difficulties and apparently conflicting opinions arise.

The 4th and last case is *Jackson* v. *Parker*, 9 Cowen, 73. The decision in that case appears to be in favour of the complainants; but the learned judge, in giving his opinion, has favoured us with the premises from which he draws his conclusions, and thereby has enabled us to form our own judgment from the same premises. The opinion was delivered by Judge *Savage;* and he sets out by saying, that a judgment at law is not a lien on a mere equitable interest in land; and the execution under it will not pass an interest, which a Court of law cannot protect and enforce. There must be, (he says,) either an interest known and recognized at law, or an equitable interest within the meaning of the statute. If he had stopped here, he would have only reiterated the uniform current of decisions on those cases, both in *America* and *England.* But he goes further, and says that an equitable interest, coupled with possession, may be executed and sold; for, (says he,) the interest of the mortgagor or mortgagee in possession, is bound by a judgment and may be sold; but, out of possession, neither has an interest upon which the lien of a judgment can attach. The case which the judge has given, it is apprehended, will not sustain the doctrine it was introduced to establish. In the case of a mortgage, the parties are placed on peculiar grounds, growing out of the relation in which they stand as it respects each other's rights. Technically, the legal estate would seem to vest in the mortgagee upon the execution of the mortgage, subject to be defeated by a strict performance of the condition. But in practice it is the settled doctrine in equity, and the Courts of law have long since adopted the same doctrine, that the mortgage is a mere security, and that the mortgagor as to all the world except the mortgagee, is the real owner and a freeholder, with the civil and political rights belonging to that character; that the equity of redemption is the real estate and tantamount to a fee at law, until barred by foreclosure. 4 Kent's Comm. 153, 154, note *a,* and the authorities there cited. In *New-York*, and perhaps all the *American* states except one, a judgment at law against the mortgagor before foreclosure, is a lien on the equity of redemption, and the estate is liable to be executed and sold, subject to the lien of the mortgagee. But this is not the case as it respects the estate of the mortgagee. The reporter has made Judge *Savage* say that which is directly

contradicted by every case in the books which we have seen. The decisions in *New-York* and elsewhere are quite uniform on that important subject. They all say, in express and clear language, that the estate of the mortgagee is not the subject of execution until the title is made absolute by foreclosure. That the default of the mortgagor and forfeiture of the condition of the mortgage, are not sufficient to make the estate of the mortgagee subject to execution. There must first be an absolute foreclosure. 4 Kent's Comm. 154.—*Jackson* v. *Willard*, 4 Johns. Rep. 41.—*Blanchard* v. *Colburn*, 16 Mass. Rep. 345.—*Eaton* v. *Whiting*, 3 Pick. Rep. 484.—*Huntington* v. *Smith*, 4 Conn. Rep. 235.—*Bogart* v. *Perry*, 1 Johns. C. R. 52. The Court cannot perceive much analogy, if any, between the great principles which govern mortgaged estates and these now under consideration. In *England*, not even the equity of redemption is the subject of execution.

Equity cannot construe a statute otherwise than a Court of law; both Courts are bound by the same rules of construction. Equity will remove impediments which are in the way of legal rights; and will give redress where there is a right without a remedy at law, or where the legal remedy is incomplete, but cannot create a right unknown to the law. *Buford* v. *Buford*, 1 Bibb, 305.—*Allen* v. *Sanders*, 2 Bibb, 94. A bond for land gives no vested right to the land; it is but a right to ask for land, and may be generally specifically enforced. *It is not an equitable interest that the statute can execute, and convert into a legal estate.* These bonds, bargains, covenants, promises, and agreements for land, remain as they did before the statute, mere choses in action which may compel the subject in specie, or may only sound in damages. They are no more the subject of execution, nor the land therein described, than bonds, covenants, and contracts, for specific chattels. *Thomas* v. *Marshall*, Hardin's Rep. 19.

There is one other view of the subject which it may be proper to notice. By the statute respecting the assignment and negotiability of bonds and notes, these bonds and covenants for land are made *quasi commercial paper*, and are transferable from hand to hand by endorsement thereon; and each holder can maintain an action against the maker in his own name. It cannot therefore be presumed that, in the eye of the statute respecting the

execution and sale of trust estates, these bonds and covenants can be viewed as deeds or conveyances, creating a trust that the statute can execute and convert into a legal estate; and upon which a judgment at law, against each different holder through whose hands they may pass, attaches as a lien. Such a construction would lead to endless difficulties; destroy the object of the statute of assignments; and put out of circulation a large amount of the active and effective capital of the country.

Having thus disposed of the first question, it seems to be unnecessary to examine the second. But as the point was ably argued by the counsel on both sides, and the consideration of it pressed upon the Court with great earnestness, it is due to those concerned that it should be noticed. The complainants' counsel have insisted, that the mere inadequacy of price is not sufficient of itself to set aside a contract in any case, and particularly sales at auction. This is certainly correct as a general proposition. There is, however, a great distinction between rescinding a contract when once executed, and refusing to decree a specific performance of a contract. Chancellor *Kent* says, a Court of equity must be satisfied that the claim is fair, just, and reasonable; the contract equal in all its parts, and founded on an adequate consideration; before it will decree performance. If there be any objection on these points, that is well grounded, the party will be left to his remedy at law. *Seymour* v. *Delancey et al.* 6 Johns. C. Rep. 222. The Courts in *Maryland* have said, that to entitle a complainant to a decree for a specific performance, the contract must be neither hard nor unreasonable; but must be fair, full, and honest in all its parts, not only in the beginning, but that the performance of it must be such, that it may be fairly and conscientiously required at the time the aid of the Court is asked. *Carberry* v. *Tannehill* 1 Har. & Johns. 224.—*Perkins* v. *Wright*, 3 Har. & M'Henry, 324. In *South Carolina*, a specific performance is never decreed, unless the contract be fair, certain, just, and equal in all its parts, and for an adequate consideration. *Clitheral* v. *Ogilvie*, 1 Desaussure, 257. In *Kentucky*, equity will not enforce the specific execution of a contract, if it were obtained under unfair circumstances, or where there has been any unfair practice after contract, nor unless the contract appears fair and reasonable, nor if it be hard or unconscientious. *Edwards* v. *Handley*, Har-

Nov. Term,
1831.

din, 605.—*Buckner* v. *Griffith*, 1 Bibb, 230.—*Bowan* v. *Irons*, 2 Bibb, 78.—*Eastland* v. *Vanarsdel*, 3 Bibb, 274. In *England*, many of her most able chancellors have repeatedly recognized the same rule of decision. Lords Chancellors *Somers*, *Maccles-field*, *Harcourt*, *Talbot*, *Hardwicke*, *Rosslyn*, and *Eldon*, have all said that equity will not carry an unfair or unreasonable transaction into execution, but will leave the party to his remedy at law.

The transaction under consideration is certainly hard and unconscientious. The price paid for the lots is entirely inadequate. It is satisfactorily proved that, at the time of the sale, these lots could have been cashed for at least 105 dollars, and at this time for between 500 and 600 dollars, and the amount paid by the purchasers was only about 21 dollars. The other circumstances of the case present the purchasers of these lots in the character of cold, calculating speculators. At the time of the sale and before any purchases were made, *Modisett* informed them that he had no title to the lots, and that he hoped they would not bid; and after the sale and before any money was paid to the sheriff, *Modisett* again informed them that he had no title, and that he did not wish them to pay money for him for nothing; and that if they would relinquish their bids, he would pay the amount thereof to the sheriff; which proposition they refused to accede to. They were not only willing to see the last drop of blood drawn from their neighbour's veins, but they also now demand the pound of flesh.

Upon the whole view of the case, it is very clear that the appellees are not entitled to the aid of a Court of equity.

*Per Curiam.*—The decree of the Circuit Court is reversed with costs. To be certified, &c.

*Kinney* and *Dewey*, for the appellants.

*Farrington* and *Judah*, for the appellees.