Judge Ewing
delivered the Opinion of the Court.
It is suggested as important to the ends of justice, that both of these cases shall be considered together. As the records are together, we have no objection to do so.
In the year 1821, Neilson, Nichols and Co. recovered judgment, upon a note against C. Churchill dated the 24th of September, 1818, for two hundred and ninety-six dollars, interest and costs. Sundry executions having been returned, no property found — on one, issued the 6th of March, 1823, the sheriff returned, that it had been levied on a hogshead of rum and two kegs of French brandy, given up by Churchill, and sold, by his consent, without advertisement, and Jacob Larue became the purchaser, for the amount of the execution and costs, upon a credit of two years, and executed bond with James Larue as his surety.
On the 3d day of June, 1825, the plaintiffs caused an execution to be issued on the bond, which was placed in the hands of D. K. Haycraft, deputy for, sheriff of Hardin County; who returned 1 had levied the same on 571 acres of land, on where Jacob Larue then lived, and not sold for w; time to advertise, and accompanied the return Jwitn a written agreement signed and sealed by Jacob and Marys Larue, acknowledging that they had given up the to be sold to satisfy the execution, and by a subsequent clause, they direct the land to be sold provided it will command three fourths of its value, according to the act of Assembly in such cases made and provided. Commissioners *334 valued the land at twenty dollars per acre, under the relief laws. The plaintiff caused a venditioni exponas to be issued seven or eight times, all of which were returned— not sold for want of bidders. Miller, the sheriff, having died — on the motion of the plaintiff, by his counsel, the venditioni exponas was directed to the then acting sheriff, by the order of the Court, and in September, 1830, he returned that he had sold the land to Jacob W. Larue. On the motion of the plaintiffs by their counsel, this execution and sale, together with a subsequent one, were quashed, in September, 1830.
And immediately afterwards, to-wit: on the 24th of September, 1830, the complainants filed their bill, in which they allege the foregoing facts, and also, that before the execution of said bond, Jacob Larue had become embarrassed, and executed a mortgage on the land to James Larue, in order to indemnify him as his surety in some liability. And that both Jacob and James Larue had become insolvent, and some doubts were entertained, whether the land could be sold under said levy; but as the levy and paper signed by the Larues gave the complainants an equitable lien on the land, they pray a sale, and for general relief, and make said Larues, and, by amendment, Haycraft, defendants.
In September, 1832, C. Churchill filed his petition, praying to be admitted as a defendant in the chancery suit, in which he alleges the execution of the mortgage by Jacob to James Larue, upon the land, and that James Larue had assigned the same to Peter Atherton, who had procured the land to be sold under a decree of the Court, foreclosing said mortgage, and ordering a sale, and that Jacob H. Larue had become the purchaser, and he had purchased the land from him.
The Court ordered him to be made a defendant, and the complainant amended his bill .making him such. Whereupon, Churchill filed his answer, exhibiting the record of the suit—Atherton against the Larues, and the mortgage from Jacob to James, and the assignment from James to Atherton, and to himself, and relies upon the superiority of his claim to the land.
*335 It appears from the exhibits, that James Larue holding a note on Jacob, for eight hundred and twenty-seven dollars and seventy-nine cents, and also, being the security of Jacob, in a note to the executors of Ward’s estate — the land was mortgaged to him to secure the note, and to indemnify him against his securityship by deed bearing date the 4th of October, 1819. That James Larue, by an indorsement on the mortgage deed, dated the 5th of May, 1826, assigned all his interest therein to Atherton, and also assigned the balance due upon the note, then amounting to six hundred dollars, and some interest. That Atherton, by a proceeding against the Larues, had obtained a decree and sold the land by a commissioner, and Jacob H. Larue became the purchaser, but failed and refused to execute bond for the' purchase money. And Atherton, on the 21st of November, 1829, filed a bill against him, praying a decree for the money bid at the sale. Jacob H. Larue resisted the prayer of the bill, upon the ground that the land had been previously given up to be sold, and had been levied on, under the execution in favor of Nichols & Co. The court decreed him to pay the money bid, and the case was brought to this Court; and whilst it was here depending, an arrangement was made between Atherton and Churchill, by which the latter agreed, for the consideration of three hundred and seventy-five dollars, to purchase out the interest of Atherton in the mortgage and decrees; and Jacob H. Larue agreed to give Churchill one hundred dollars, to take his bid off his hands; whereupon, the suit in the Court of Appeals was dismissed, and Atherton came into Court and acknowledged satisfaction of the decree, and a commissioner was appointed to execute a deed for the land to J. H. Larue, who gave his bond to Churchill for a conveyance to him.
After the foregoing proceedings on the sale bond, the plaintiffs, at the June Term, 1834, moved the Court to quash the bond, because of the unconstitutionality of the law under which it was taken, which was overruled by the Circuit Court; and upon the hearing, their bill was also dismissed. Both cases have been brought to this Court.
*336 Our predecessors, under peculiar circumstances of responsibility, deliberately settled that, the laws authorizing a replevin for two years—and the principle as well applies to sales on a two years credit—so far as they operated upon pre-existent contracts, were unconstitutional and void. In that opinion we entirely concur. But after the plaintiffs have delayed making any objection to the bond for about eleven years, and in the meantime, have sued out an execution on the same, and on various occasions sued out a venditioni exponas to enforce the sale of property levied under it, and made a motion to the Court for a special order directing one of them to the acting sheriff, upon the death of the former sheriff, and also to quash the sale when made at a sacrifice, and finally filed his bill to enforce the sale of the property levied under it, by the decree of the chancellor, that it was too late to retrace their steps, and to sustain a motion against the bond upon the ground alleged.
These various acts amount virtually to an acceptance of the bond in lieu of the judgment, and to a recognition of its obligatory force, and to a waiver of all objections to it on the ground relied on. And surely those for whose benefit the provision was introduced into constitution, may waive that benefit by express agreement, or by acts equivalent thereto, and should be held to such waiver. They should not be permitted to use the means which the law has afforded them upon the bond, recognizing it as valid, in such a negligent manner, as in the meantime to give the obligors an opportunity to squander away their effects, and become insolvent, and then to turn round and quash the bond, and take their remedy against the original debtor, and drive him to take his recourse upon insolvent obligors, for his indemnity for his property purchased at the sale.
We, therefore, perceive no just ground for reversing the decision of the Circuit Court, overruling the plaintiffs’ motion to quash.
*337 In relation to the chancery suit, we have had more difficulty. The death of Miller, under whose sheriffalty the execution was levied, can afford no pretext for equitable interposition. An execution once begun by the deputy, may, according to common law principles, be carried on to completion, notwithstanding the death or resignation of his principal. If he levies before, he may sell afterwards.
Again: it cannot be doubted, that the Court may so far superintend its own execution, as by its order to command the acting sheriff to carry on the execution. And this step was taken by the plaintiff. We therefore regard the common law court as fully competent to manage its own process and enforce the sale.
But the property levied on is encumbered. Churchill claims it, under the assignment of the mortgage, and contends that his claim is paramount and superior to the claim of the plaintiffs under the levy.
In this embarrassed condition, the property will not sell to advantage. Prudent men will not purchase, risking the uncertainty of title, and exposing themselves to litigation to sustain it. Competition among bidders will be reduced, and the property sacrificed, to the manifest injury of the plaintiff's. For the defendants in the execution are now hopelessly insolvent, and if the debt cannot be made out of the land, it cannot be made at all.
Though a common law court can enforce its own execution, it cannot, before the sale, bring all necessary parties before the court, determine upon the validity of the opposing claims, and clear away the encumbrance, if the claim of Churchill shall be found to be inferior. The arm of a court of common law being too short to reach these desirable ends in advance, we can perceive no objection to the interposition of the auxiliary aid of the chancellor in such cases. Indeed, it has been settled by this Court, that a court of equity would interpose to remove impediments to legal rights, and to clear away encumbrances on estates and uncover them to the process of law, or subject, them to the de *338 mand at once. 4 Monroe, 589; 1 Bibb, 305. And the principle is well settled in relation to fraudulent encumbrances.
And we can perceive no just objection to the exercise of the powers of the chancellor where there is an outstanding claim to property levied on, derived from the same source, which, whether it be valid or invalid, merritorious or not, may essentially effect the sale, and produce irreparable injury to the plaintiffs in the executions.
But it is objected, that the bill-does not present this aspect of 'the case, and that this relief should .not be afforded to the complainants. Upon this point we have been made to entertain some-doubt. The bill, or amendments, have not, by the draftsman, been drawn with a view to this object. But general relief is prayed, and facts are set forth showing the existence of the encumbrance, and various efforts to sell without effect. And the answer of Churchill sets up the claim, exhibits the assignment to Atherton, and the proceedings upon it, and-the mortgage, and the whole nature, age and character of his claim.
If any defects exist in the bill and amendments in relation to the outstanding claim, they are fully supplied in the answer and exhibits. And these defects and omissions being of matters, which cannot be presumed to be correctly known to the complainants, are aided by the statements in the answer.
We are, therefore, inclined to the opinion, that the statements in the bill and amendments, aided by the answer, are sufficiently broad to present this aspect of the case.
The question then occurs — is the claim of Churchill to the land -in question paramount and superior to the interest of the complainants under the levy?
By the written agreement of both mortgagor and mortgagee, the land was surrendered to the sheriff to satisfy the execution of the plaintiffs, prior to the assignment to Atherton. The surrender is absolute, and for a specified object, and accepted by the sheriff, instead of other property which he had the right, as well *339 as the opportunity, at that time, to levy the’execution upon.
We do not regard the surrender as conditional, or made to depend upon the property’s selling for three fourths of its value, but absolute and unconditional. The stipulation in the writing; requiring the property, when sold, to sell for three fourths of its value, was, as we conceive, introduced, by way of precaution, as a restriction upon the sale, and not upon the surrender. The failure to sell for want of bidders could not operate to release the property from the levy.
Nor do we regard, the surrender, as a mere naked authority, subject to revocation, and virtually revoked, by the assignment to Atherton—as contended by Churchill-but as a valid, irrevocable agreement, on the part of the Larues, and as a waiver of all objections to their title, or to the validity of the levy. It was virtually an assignment of all the interest, equitable or legal, of James Larue in the property, and a withdrawal of it from his subsequent control, at least so far as to preclude him from disposing of it, to others, so as to overreach the execution.
Notice to Atherton, of the pre-existent levy, was not necessary. The execution, levy and return were matters of public record, and he was bound, at his peril, to take notice of them.
It will not be contended, that a debtor can dispose of his property, so as to overreach the lien in favor of an execution, in the hands of an officer. If he cannot, much less can he dispose of it after it has been levied on, so as to everreach the levy.
The agreement and levy, in pursuance thereof, must be construed to possess all the force of a levy made on property legally subject to the execution.
The assignment to Atherton, being subsequent to the levy, must be construed- as inferior or subject to the-levy. Nor do the foreclosure of the mortgage, the sale and purchase of the land by Jacob H. Larue, and conveyance to him, by the commissioner, better the condition of Churchill.
The plaintiffs in the execution, were not parties to *340 that suit, and are not bound by the decree or proceedings under it. Their rights remain as if no proceedings were had.
A court of equity, when interposing in aid of a court of law, may either clear away the encumbrance, and leave the execution to perform its office, or, having taken cognizance of the case, may act immediately upon the rights of the parties, and afford direct redress to the creditor. The latter course would seem most appropriate in the present case, as Churchill, who has the whole interest in the land, but subject to the execution, is before the court, and a final disposition may be made of the whole case.
But, it is a matter of some question, how the sale of the land, should be made, under the agreement, by which it was surrendered.
But inasmuch, as the mortgagee’s interest was not subject to execution at the time of the levy, he had the right, when he surrendered it to the execution, to prescribe the terms upon which it should be sold. The terms are that it shall be sold in satisfaction of the execution, provided it will command three fourths of its value. He was willing that it should be sold, but was unwilling that it should be sacrificed. The sheriff accepted it, and made the levy upon it, on those terms, and as the chancellor has assumed jurisdiction as auxiliary to the common law court, to remove encumbrances and carry out the execution, the sale ought not to be decreed upon any other terms, than those prescribed by -the stipulations of the parties, when the surrender was made. As the sale, j.f made at law, must have conformed to the terms of the surrender, equity, which follows the law, will direct it to be made in the same way.
A commissioner should, therefore, be appointed to value the land, at its cash value, at the time of valuation, and then, so much thereof should be sold, under the decree of the Chancellor, as will pay the complainants the amount of their debt, interest and costs, provided that it shall not be sold for less than three fourths of its value, assessed as aforesaid. And Churchill, or *341 those under whom he claims, or whoever shall hold the legal title to the land derived under the sale, made under the decree in favor of Atherton, shall be decreed to convey, by quit claim deed, all his or their title to the purchaser under the decree herein.
But, as it appears that the legal title to the land derived under Atherton’s decree, was, at the hearing below, in Jacob H. Larue, and he is not before the Court, and the assumption of jurisdiction in this case rests upon the ground only of clearing away or quieting that incumbrance, the Court cannot finally dispose of the case, until he is brought before the Court, if, in the mean time, he has not conveyed to Churchill. He is evidently a necessary party.
The Circuit Court, therefore, erred in dismissing the complainants’ bill absolutely.
The decree is, therefore, reversed, and cause remanded, that time may be allowed the complainants to bring Jacob H. Larue before the Court, and further steps taken not inconsistent with this opinion. And the appellants are entitled to their costs in this Court, on the appeal. And the judgment of the Circuit Court, overruling the motion to quash the sale bond, is affirmed, and the defendants in error are entitled to their costs in this Court, in that case.