LOUIS ELIE JOSEPH HENRI DE GALARD DE BRAS-
SAC DE BEARN, COUNT AND PRINCE OF BEARN AND..
CHALAIS, *vs.* ROSS R. WINANS AND FERDI-
NAND C. LATROBE, ADMINISTRATORS C.
T. A. OF THE ESTATE OF BEATRICE
WINANS ET AL.

*Attachments; property under the control of a Court of equity.
Equity; jurisdiction.*

An order of the Orphans' Court awarded to certain children
property to which the Court had decided they were entitled
from the estate of their deceased mother.  By proceedings in
equity and appeals to the Court of Appeals, it was decreed
that the order of the Orphans' Court should be set aside and
the bonds of which the estate consisted awarded to the father,
to be paid to him absolutely; pending these proceedings,
the bonds, registered in the names of the children, and depos-
ited in a certain trust company, had been attached by certain
creditors of the father; upon the decision by the Court of
Appeals that the bonds should be paid to the father, the
attaching creditors intervened in the equity proceedings and
petitioned that the bonds be not paid over to him until the
determination of the attachment suits; the Circuit Court
modified the decree of the Court of Appeals to that effect, and
on a second appeal its action was ratified to the extent of
holding that it was proper that the bonds should be kept
where they were, pending the attachment suits; the attaching
creditors, by petition, then prayed that the registry of the
bonds in the children's names should be declared of no effect
and should be cancelled; the Circuit Court refused so to do,
and on appeal it was *held,* that its action was correct.

pp. 608-609

If the bonds could not be reached by attachment because of
their registration in the names of the children, then in the
absence of fraud or some ground of jurisdiction, equity has

no power to change or strike out the registration at the instance of attaching creditors, simply for the purpose of making the bonds subject to attachment. p. 609

A Court of equity can not create new rights not before existing at law, and then take jurisdiction to pass upon and enforce them, because the law affords no remedy. p. 609

Pending an appeal from the judgment quashing the attachment, it was *held,* that the bonds should not be delivered over to the father. p. 611

Not only the attaching creditors, but the garnishees, had rights which the Court of equity had to recognize and respect.

p. 611

*Decided April 5th, 1911.*

Appeal from Circuit Court No. 2 of Baltimore City (GORTER, J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*Maurice Leon* and *Arthur George Brown,* for the appellant.

*J. Kemp Bartlett* (with whom were *L. B. Keen Claggett* and *R. Howard Bland,* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is the second appeal taken by the appellant since the decision of the case of *Prince de Bearn* v. *Winans,* reported in 111 Md. 434. The former one was from a decree passed June 6th, 1910, after the mandate of this Court in the case in 111 Md., and in the opinion filed by JUDGE PEARCE, 115 Md., the controversy between the present parties is explained. It is sufficient to say that Pierre de Bearn and Francois de Bearn, Odon de Bearn and Jean Baptiste Chaumet, claiming to be creditors of the appellant, sued out of the Superior Court of Baltimore City attachments against him, as a non-

resident of this State, by which they seek to subject the bonds which we determined in 111 Md. to belong to the Prince to those attachments. We held in the case in 111 Md., amongst other things, that the Prince was "entitled to have the two-thirds of the trust fund which were distributed to his two children awarded and paid over to him absolutely and to hold the same in his own right", and we passed a decree remanding the cause to the end that further proceedings might be had in conformity with the opinion then filed. The trust fund spoken of had been invested in bonds which were registered in the names of the two children of the appellant, to whom they had been erroneously distributed in the Orphans' Court of Baltimore City. After the mandate of this Court had been received in Circuit Court No. 2 of Baltimore City, the attaching creditors filed petitions praying that no order or decree be made by that Court, "directing or permitting the delivery of the said bonds to the said Prince Henry de Bearn, or the removal of said bonds out of the jurisdiction of this Court, until the trial and final determination of the said attachment suits." In the decree of that Court on June 6th, 1910, reference was made to the attachments having been laid in the hands of the American Bonding Company, Alexander Brown & Sons and the Safe Deposit and Trust Company of Baltimore, which were still pending in the Superior Court of Baltimore City, and it was declared that "This Court will not, pending the determination of said attachment cases, order the delivery of any of the said bonds to the plaintiff; but all of said bonds shall remain as and where they now are until the further order of this Court; this action of this Court to be without prejudice to the rights of said attaching creditors, or of the plaintiff in this case."

It was contended in the appeal from that decree that it was contrary to the mandate of this Court and that the Court of Equity should not have permitted the attaching creditors to intervene, or in any way interfere with the immediate delivery of the bonds of the plaintiff, which, according

to his construction, the mandate of this Court directed. We, however, declined to adopt that contention for reasons which are fully and forcibly stated in the opinion delivered by JUDGE PEARCE, which need not now be repeated.

On October 21st, 1910, the appellant filed a petition referring to the decree of June 6th, 1910, and to portions of the opinion of this Court in 111 Md.; alleging that the Superior Court had on October 14th, 1910, determined that the bonds were not subject to attachment and had discharged them and relieved them from the operation of the writs of attachment; and praying that "an order be made in accordance with the leave granted in the decree, giving full effect to the mandate of the Court of Appeals therein, restoring to your petitioner the aforesaid property and causing the same to be awarded and paid over to him absolutely that he may hold the same in his own right as decreed by the Court of Appeals". The leave granted in the decree referred to is, "that the plaintiff have leave to apply at the foot of this decree for such further order, judgment or decree as may be needed to give full effect to the mandate of the Court of Appeals herein".

The attaching creditors filed an answer and a cross-petition, in which they alleged that the appellant had filed in the Court of Appeals a petition praying that the lower Court should be direced to forthwith sign an order turning over to him or his solicitor and attorney in fact the bonds referred to, but that said petition was dismissed by this Court, and that he then took an appeal to this Court from the decree of June 6th. They also alleged that the attachments were still pending.

A demurrer to the cross-petition was sustained, and hence it will be unnecessary to discuss that at length, further than to say that the learned judge, who sustained the demurrer, but also dismissed the petition of the appellant, filed an opinion in which, as well as in the orders passed by him, he gave the reasons which induced him to adopt the course pursued by him. As to the demurrer, he took the position

that if the effect of the decision of this Court in 111 Md. was to make the bonds subject to attachment, there was no occasion for a Court of Equity granting the relief sought in the cross-petition, and if, on the other hand, they were not in such condition as to be subject to attachment, and in order to make them so it was necessary for a Court of Equity to change or modify them, then in his opinion that Court had no power to change the form of property, so as to make it subject to attachment, when it is not subject to attachment in its present form, and should not aid the statutory remedy of attachment by altering the form of property. In the cross-petition the attaching creditors had asked the Court to pass an order declaring the distribution and registration of the bonds in the names of the infant children to be illegal, invalid and of no effect; that the bonds be brought into that Court by the American Bonding Company and Alexander Brown & Sons, but that they should not be taken from the custody of the said American Bonding Company and Alexander Brown & Sons, pending the determination of the attachment suits, and that when they were brought into that Court that the Clerk make upon each of them an endorsement as follows: "Registration in name of Henry Ross Joseph Gaston de Galard de Bearn or Beatrice Neva Marie Cecile de Galard de Bearn, as the case may be, is hereby cancelled by order of the Circuit Court No. 2 of Baltimore City, bearing date the......day of .........., 1910, in the cause of *De Bearn* v. *Winans et al.*"

The cross-petition clearly shows that the subject of the petitioners in having such an order passed was to enable them to reach the bonds by the attachments—or at least to remove what was supposed to be an obstacle in their way of so reaching them. The only possible standing they have in the Court of Equity is as intervenors for the benefit of their attachments, as they have no interest in the bonds excepting as they claim to have as attaching creditors. Under such circumstances we think the Court was right in refusing to take the action prayed for in that cross-petition, merely for

the purpose of aiding the attachments. The cases of *Harper v. Clayton,* 84 Md. 346, and *Frederick Co. Bank* v. *Shafer,* 87 Md. 54, together with JUDGE PEARCE's *opinion* in the other case sufficiently show the position this Court has taken on such questions to avoid the necessity of citing others. As was said in *Harper* v. *Clayton,* "a Court of Equity, however broad and far-reaching its powers are, cannot create new rights not before existing at law, and then take jurisdiction to pass upon and enforce them because the law affords no remedy." In other words, if these bonds could not be reached by the attachments by reason of the fact that they were registered in the names of the children, then, in the absence of fraud or some ground of equity jurisdiction, a Court of equity has no power to change or strike out the registration of them, at the instance of the attaching creditors, simply for the purpose of making them subject to attachment; and if they are already subject to attachment, then, as JUDGE GORTER well said, there is no occasion for such relief. We do not intend to express an opinion as to whether they are liable to attachment, as we understand cases involving that question are now in this Court, to be heard at the April Term, and hence it is proper to wait until counsel are heard, and that question is properly considered by us before intimating any opinion on the subject.

But the order appealed from, which is the one dismissing the petition of October 21st, 1910, presents a different question. That order recites the portion of the decree of June 6th, which declared that the bonds will not be delivered to the plaintiff pending the determination of the attachment cases; refers to the fact that appeals had been taken to this Court from the orders of the Superior Court, "and that therefore the said attachment cases are not yet finally determined as contemplated in the decree herein." The order dismissing the petition of October 21st, 1910, was passed "without prejudice to any other petition, suit, action or proceeding" which the appellant might thereafter bring or institute in relation to any of the matters referred to

in his petition. To refuse the affirmative relief asked for in the cross-petition, in order that the attaching creditors might get the bonds in shape to be attached, was a very different thing from refusing to act on behalf of the appellant, so as to enable him to take possession of the bonds which the attachments had been issued to reach. If the appellant owes the debts, and these bonds can by the process of attachment be subjected to the payment of those debts, there is no reason why a Court of equity should aid him in getting the bonds beyond the reach of the creditors; but, on the contrary, a Court of conscience should not lend its aid to such results.

A great deal has been said about the decree of the lower Court being contrary to the mandate of this Court, and although we disposed of that question in the other appeal, it will not be out of place to repeat that, in our judgment, there was no such conflict. In 111 Md. we were primarily determining, as between the appellant and the two children, whether he or they were entitled to the trust fund, which was invested in these bonds. We held that *he* was, and, in passing on the question, simply stated what necessarily followed as a result of our decision—that he was entitled to have the fund awarded and paid over to him absolutely, although we left it to the lower Court to carry that out by its decree. We were not determining rights between him and these attaching creditors, but simply between him and the children. If, while the first case was pending in this Court, he had settled the claims of these creditors, by selling and assigning to them some of the bonds, can it be supposed that anything we said in the opinion in 111 Md. would have required the Circuit Court to turn over to him the bonds so sold, instead of to the creditors who had purchased them, upon the latter satisfying the Court that they had so purchased them? Surely not, and what is the difference, so far as the question of conflict between the decree and the mandate is concerned, between that and the Court doing what it did, when its attention was called to the atttach-

ments? It was not only the right, but the duty of the
lower Court not to pass an order or a decree that the bonds
should be delivered to the appellant, while the attachments
were pending. It had no jurisdiction to determine whether
the attachments could bind these bonds, under the proceed-
ings then pending in the Superior Court. If it could have
done so, the judge sitting in the Circuit Court might have
been of the opinion that they were not liable to atttach-
ment, and the one sitting in the Superior Court might have
held that they were.

Not only the attaching creditors but the garnishees had
rights which the Circuit Court was required to recognize
and respect. This Court had determined that the bonds
belonged to the appellant, and, that being so, if the attach-
ing creditors proved that he was indebted to them and showed
they were entitled to issue the attachments, the only ques-
tion left open was whether the bonds could be reached by
them. The garnishees could not be required to assume the
responsibility of determining that question for themselves,
and beyond that, the garnishees apparently were no longer
in the Circuit Court. On the petition of the appellant
and the attaching creditors, filed on February 4, 1910, they
had been made parties, but on the application of the appel-
lant that petition was subsequently dismissed. It is true
that, after the cross-petition was filed by the attaching cred-
itors, the Court passed an order for the appellant, the
American Bonding Co. and Alexander Brown & Sons, to
show cause why the bonds should not be brought into Court
for the purpose of having the endorsements or registration
written therein cancelled by endorsements to be made by
the clerk of the Court, but, as we have seen, that cross-peti-
tion was dismissed, and, moreover, when the petition of
October 21, 1910, was filed by the appellant, the cross-peti-
tion had not even been filed. It would, therefore, have
placed the garnishees in a very peculiar position if the
petition of October 21st had been granted, notwithstanding
the fact that they were still garnishees, although apparently

not parties to the equity suit. We say "apparently", as owing to' the numerous papers which have been filed we may not have had our attention directed to something which would show that they were still in the Equity Court.

The record in the former case shows the terms on which the bonds were held. The American Bonding Company was on the bond of the appellant as guardian, and it was agreed that he should deposit in a box in the vault of the Safe Deposit and Trust Company of Baltimore these bonds, registered in the names of the infants, which he said in the letter to Alexander Brown & Sons, "we have agreed that neither is to remove without the written consent of the other". It was further agreed, as shown by that letter, which was approved by the Bonding Company, that the box was to be opened only in the joint presence of an officer of the Bonding Company and a member of the firm of Alexander Brown & Sons. After saying that Alexander Brown & Sons were to cut the coupons from the bonds, retain a commission and pay the premium to the Bonding Company, and the balance was to be made subject to his check as guardian, the letter says: "Your responsibility is to be limited to the clipping of coupons and crediting the same, and you are to be in no manner responsible for the custody of the bonds or for any other matter connected with or in any way growing out of the above arrangement. It is understood also that you shall have the right to terminate your employment in this matter at any time upon reasonable notice to myself and the American Bonding Company."

It is true the bonds were registered, but if in the attachment cases it be held that they can be made subject to the operation of the attachments, and are condemned in the hands of the garnishees, or any of them, then undoubtedly a Court of equity would be authorized, by proper proceedings, to have them transferred in such way as would make the judgments effective. There is no longer any doubt about their belonging to the appellant, and if they can be condemned, what we have said about a Court of equity not giving its aid would

not apply, if it becomes necessary to have its aid in enforc-
ing judgments, if such be obtained. As the bonds are appar-
ently worth at par $185,000, and the attachments, if sus-
tained, are only for something like $50,000, we do not under-
stand why some arrangement could not be made by which all
except sufficient to meet the attachments could be turned over
at once to the appellant, but, so far as the record discloses,
the appellant has not asked for that, but has demanded all
of them, which, until the attachment cases are disposed of,
we are of the opinion the Circuit Court can not properly do.

We have not deemed it necessary to discuss the effect of
dismissing the petition without prejudice, etc., or other
questions, but for the reasons given the order appealed from
will be affirmed.

*Order affirmed, the appellant to pay the*
*costs.*