## GEORGE W. HARPER AND OTHERS *vs.* RACHEL C. CLAYTON.

*Unassigned Right of Dower not Liable to Creditors of Widow at Law or in Equity—Jurisdiction of Equity over Debtor's Choses in Action—Creditors' Bill.*

A widow's right of dower in the lands of her deceased husband, before the same has been assigned and set off to her, is a mere chose in action, and cannot be taken in execution by her creditors.

And in such case equity will not aid a creditor by subjecting the widow's unassigned right of dower to the payment of her debts.

*Semble* that apart from statutory authority, and in the absence of fraud or some element of trust, equity has no jurisdiction to subject the choses in action of a debtor to the payment of creditors, merely because the creditors have no remedy at law.

Appeal from the Circuit Court for Kent County. The prayer of the bill in this case was for the sale of the unassigned dower interest of Rachel C. Clayton in the lands of her deceased husband in order to satisfy the judgments obtained by the plaintiffs against her. The Court below (WICKES, J.) sustained a demurrer to the bill. Afterwards the plaintiffs asked leave to amend by charging that, prior to the filing of the bill of complaint in this cause, writs of execution by way of *fieri facias* had been issued on each of the petitioner's judgments obtained before the justice of the peace, as charged in the original bill of complaint, and each of the said executions have been returned "*nulla bona.*"

And they also desired to pray specifically for relief as follows : "That a receiver may be appointed to take charge of the interest of the said Rachel C. Clayton in the said real estate, and to collect the rents or income which might legally or equitably be due to the widow for her dower in the said farms, and to pay the same over to your petitioners,

under the direction of this Honorable Court, until their claims are satisfied, or else to sell the said real estate, as this Court shall order and direct."

The Court (RUSSUM, C. J.) refused the leave asked for, because, "(1.) The judgments and executions of the complainants could not be enforced against the right of dower of Mrs. Clayton in any proceeding at law or equity. Nor is there any proceeding at law or in equity by which the right of dower of the defendant can be subjected to the payment of her debts, and therefore a receiver could not be appointed. (2.) The right of dower is not assignable. It may be released (to the owner of the fee), but cannot be conveyed to a third person. Courts cannot make the law; they administer it as they find it. *Vide Code Pub. Genl. Laws*, Art. 45, sec. 12, p. 804, &c."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Hope H. Barroll* and *James P. Gorter*, for the appellants.

*James A. Pearce* (with whom was *Lewin W. Wickes* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The plaintiffs below are judgment creditors of the defendant, who is the widow of the late John S. Clayton, and as such widow she is entitled to dower in the real estate of her late husband. But it appears that her dower has never been actually assigned or set off to her, and it would, therefore, follow that she has not, at common law, any interest or estate in the lands of her husband until such assignment has been made. "Previous to the assignment of dower her interest is a mere *chose in action*, nothing but a right by appropriate proceedings to compel the assignment to be made." *Freeman on Executions*, sec. 185. So long, therefore, as the common law prevails the unassigned dower right cannot be taken in execution at law. It is contended,

however, and this contention appears to be the main ground upon which the plaintiffs ask the aid of a Court of Equity, that the law affording them no relief equity must necessarily do so. And although an interesting question of equity, jurisdiction is here presented which has been examined by some of the most learned jurists both of England and this country, it would be impossible in the limits of this opinion to do more than refer to and discuss some of the leading cases.

In the early cases in England the jurisdiction here contended for, to subject choses in action to the claim of creditors by a creditor's bill, was sustained, but generally upon the ground of fraud, trust, or for some other reason which it was conceded would entitle the creditor to invoke its aid. Thus *Taylor* v. *Jones*, 2 Atk. 600, lays down the doctrine that where a debtor has in fraud of his creditors assigned to trustees certain *choses in action* in trust for himself for life, and then over to his wife and children, a Court of Equity will favorably hear the application of such creditors, and decree such trust estate to be sold for the payment of their debts. And this was held to be so, notwithstanding such *choses in action* were not subject to levy and sale upon execution at law. *Rex* v. *Marisal*, 3 Atk. 192 ; *Edgell* v. *Haywood*, 3 Atk. 352 ; *Horn* v. *Horn*, Ambl. 79 ; *Partridge* v. *Gopp*, Ambl. 578 ; *Smither* v. *Lewis*, 1 Vern. 398. But even in cases like that of *Taylor* v. *Jones*, *supra*, and the others just cited, which would perhaps be now generally conceded to be within the limits of equity jurisdiction because of the allegation and proof of fraud, it was subsequently held in England that creditors could get no relief in equity because they had no legal right which equity could enforce. *Dundas* v. *Dutens*, 1 Ves. Jr. 196 ; *Grogan* v. *Grogan*, 2 Ball & Beatty, 210. In the case last cited LORD MANNERS quoted LORD THURLOW as having said : " The opinion in *Horn* v. *Horn* is so anomalous and unfounded that forty such opinions would not satisfy me. It would be preposterous and absurd to set aside an agree-

ment, which if set aside leaves the stock in the name of the person where you could not touch it." And in *Bayard* v. *Hoffman*, 4 Johnson Ch. 450, CHANCELLOR KENT, after a most careful and elaborate examination of the English authorities, came to the conclusion that while LORD HARD-WICKE had maintained the jurisdiction of equity thus to proceed against *choses in action*, it was afterwards denied and overthrown by both LORD THURLOW and LORD ELDON, although his own opinion, as expressed in *Bayard* v. *Hoffman, supra*, was that "the better reason is with the earlier authorities." But, notwithstanding this expression of opinion in the case just cited, the more recent cases upon this point in New York and some other States have vigorously announced and maintained the doctrine that aside from statute, and in the absence of fraud or some element of trust, chancery has no jurisdiction to subject choses in action to the payment of creditors, because there happens to be no remedy at law, and it would seem that the Chancellor himself had adopted this view, as will appear by reference to his commentaries, vol. 4, page 61, where he refers to the New York statute as authority for the statement that in that State a chose in action may be reached by process in chancery for the benefit of creditors.

The cases relied upon by the plaintiffs do not, we think, sustain their position. The first of those in point of time is the case of *Hamilton* v. *Mohun*, 1 P. Wms. 122. But in that case there was no question of jurisdiction as there is here, and it was very properly held on a bill filed for an account by an heir at law against the widow, as guardian, "that a Court of Equity in taking the account should allow to the widow one-third of the profits for her right of dower—and this, too, whether dower had or had not been actually assigned." The question of jurisdiction was not involved in *Hamilton* v. *Mohun*, and it is therefore not an authority here. The plaintiffs also cited and relied upon three New York cases, *Tompkins* v. *Fonda*, 4 Paige, 44; *Stewart* v. *McMartin*, 5 Barber, 438, and *Paine* v. *Becker*,

87 N. Y. 153. But it is sufficient to say in regard to all of those cases that they appear to be based upon the provisions of the New York statute which was in force when they were respectively decided. That statute in effect and in words provided that Courts of Chancery should have power to decree satisfaction of a judgment at law out of " any money, property or *thing in action* belonging to the defendant whenever an execution against his property shall have been returned unsatisfied in whole or in part." The same observations may be made in regard to *McMahon* v. *Gray*, 150 Mass. 289, and *Boltz* v. *Stoltz*, 41 Ohio, 540. In each of the States just named there were statutes expressly giving Chancery Courts jurisdiction to decree the sale of *choses in action* upon the application of judgment creditors.

The case of *Davison* v. *Whittlesey*, 1 MacArthur, 153 (D. C.), was much relied on by the plaintiffs. It was decided on the authority of *Tompkins* v. *Fonda, supra*, which having been based on the New York statute should have had no weight where, as in the District of Columbia, no such statute was in force. Nor are we satisfied to adopt the reasoning of the Court in *Davison* v. *Whittlesey*. After stating that *at law* the right to have dower assigned could not be reached, it is said : " But in equity it is otherwise. The widow has no right in conscience to deprive her creditors of the benefit of her right of dower for the satisfaction of their claims by continuing in joint possession with the heirs and neglecting to ask for a formal assignment, which assignment if made, would enable the creditors to reach her dower by execution." It must be remembered that in the case at bar, there is not only no fraud alleged by the plaintiff, but they have disclaimed any intention of charging bad faith or collusion between the defendant and the heirs at law who are in possession of the land in which she is entitled to have dower assigned to her. In the position she has assumed in this case, she is only standing upon her legal rights. It is conceded that at common law, aside from such statutes as

have been enacted in some of the States, though not in Maryland, the defendant's right of dower is not liable for her debts. And while it may be said, perhaps, in one sense, that "in conscience she ought not to deprive her creditors of the benefit of her right of dower" for the payment of their just claims, yet the same may be said of any one who relies on the Statute of Limitations or exemption laws to defeat such a claim. If debtors could be required by a Court of Equity to abandon their legal rights and to subject themselves to the dictates of conscience or to some law regarded as higher than the law of the land, they would doubtless seldom plead the Statute of Limitations or rely upon the provisions of homestead or exemption laws; but whenever these statutes are properly and reasonably pleaded they are as binding in a Court of Equity, which is sometimes called a Court of Conscience, as they are in a Court of law. And recognizing this right to stand upon one's legal rights, it has been held that the neglect or refusal to have dower assigned does not amount to fraud. *Maxon* v. *Gray*, 14 R. I. 641 ; *Buford* v. *Buford*, 1 Bibb. 305. This is only another application of the well-settled principle of equity that " where a rule either of statute or common law is direct and governs the case in all its circumstances or the particular point, a Court of Equity is as much bound by it as a Court of law, and can as little depart from it." 1 *Story Eq. Jurisp.*, sec. 64. Applying here, then, the conceded common law rule that the creditor has no legal right to look to the unassigned dower (it being a *chose in action*) for the satisfaction of his claims, it follows that equity will not aid him.

Much reliance was also placed upon the language used by CHANCELLOR BLAND in the case of *Watkins v. Dorsey*, 1 Bl. 531. To the same general effect also is *Ager* v. *Murray*, 105 U. S. 126, where it is said that it is within the general jurisdiction of a Court of Chancery to assist a judgment creditor to reach and apply to the payment of his debts, any property which by reason of its nature only, and not by reason of any positive rule exempting it from

liability for debt, cannot be taken on execution at law; as in the case of trust property in which the judgment debtor has the entire beneficial interest, of shares in a corporation or of choses in action. While the rule thus stated may be, when properly applied, admitted to be correct, we cannot agree with the application of it sought to be justified by *Watkins* v. *Dorsey*, nor with the broad application of the rule, as in *Ager* v. *Murray* to *all* choses in action. In the case first named CHANCELLOR BLAND said that the facts before him exposed one of the then existing deficiencies of our Code. And after stating that both real and personal property of a debtor had been subjected to be taken on execution at law, he says, " there are, however, still several kinds of property which a debtor may hold, lying beyond the reach of his creditors," and he mentions as in this class, stock in corporations and things in action. The case from which we have quoted the foregoing language of the Chancellor was decided in 1829. But very soon thereafter the Act of 1832, ch. 307, now codified, was passed, by which any interest of a debtor in stock of a corporation may be taken and sold under an execution at law. But no such act has ever passed in this State by which the thing in action here attached could be so taken and sold. That there is no such statute is the main foundation of this proceeding in equity, for if there were a remedy at law the bill in this case was properly dismissed. It was held in *Watkins* v. *Dorsey*, that where a party cannot obtain relief at all, either by an ordinary execution or by the extraordinary remedy of outlawry or attachment of the person, by reason of the peculiar situation of the property or the equitable nature of the title, he may obtain relief by bill in equity. But we think it is apparent that this language, even if it was not so intended, should be limited so as to relate to enforcement of some *existing* legal right, for a Court of Equity, however broad and far-reaching its powers are, cannot create new rights, not before existing at law, and then take jurisdiction to pass upon and enforce them because the law

affords no remedy. It is perhaps but fair to infer that the language of the Chancellor related to property situated like that in *Alcock* v. *Harris*, 10 Gill & Johnson, 226, to which case he refers, where it was held that the equitable interest of the defendant in personal property, which under the circumstances of that case could not be taken by execution at law, might be attacked in equity.

Nor do we assent to this view that the mere abolition of the extraordinary remedies of outlawry and attachment of the person would confer jurisdiction on equity. Such a conclusion would be in conflict with reason, as well as with modern authority. It would certainly not seem to follow that if the law had always and consistently refused to give an execution against things in action, and had allowed only the extraordinary remedies just mentioned, that upon the destruction of the latter, the former would not only thereupon spring into existence, but become remedies appropriate for a Court of Equity. The contrary conclusion would, we think, be more reasonable, namely, that the Legislature having abolished execution against the person which was used for the purpose of getting satisfaction out of the debtor's effects which could not be reached by other executions, and having failed to provide any new remedy to take its place it was not intended there should be any. And so it has been held in *Donavan* v. *Finn*, 1 Hopkins Ch. Rep. 59 (N. Y.); *Buford* v. *Buford*, 1 Bibb, 305 ; *Greene* v. *Keene*, 14 R. I. 387, 397. " Equity follows the law," and as we have seen, a rule either of statute or common law is as potent in a Court of Equity as in a Court of law. 1 *Story Eq. Jur.*, sec. 64. Whatever may, at one time, have been the vague and general rule as to the limits and extent of equity jurisdiction, it is now well settled that " no Court of Chancery at this day would attempt to supply the defects of law by deciding contrary to its settled rules in any manner, to any extent, or under any circumstances, beyond the already settled principles of equity jurisprudence. 1 *Pomeroy Eq. Jurisp.* section 47.

In reference to the New York cases cited in *Ager* v. *Murray*, *supra*, namely, *McDermutt* v. *Strong*, 4 Johns Ch. 687, and *Spader* v. *Hadden*, 5 Johns Ch. 280, it may be said that they were both prior to *Hadden* v. *Spader*, 20 Johns, N. Y. 554, in which PLATT, J., said there was such a conflict of authority and dicta upon this question that he felt at liberty to decide it upon sound principles of justice and public policy, and that he was not prepared to extend the jurisdiction of equity to any other cases than those wherein *the property itself was liable to execution at law*, and which had been also assigned in fraud of creditors, holding also that the power to subject *choses in action* of the debtor had not been conferred upon the Courts, and suggesting the necessity for legislation. It has been supposed that this expression of opinion led to the statute which was afterwards passed in New York conferring jurisdiction upon Courts of Chancery to entertain a bill like the one filed in this case.

It would seem to be reasonably clear from the authorities already cited and the discussion of them that, in the absence of a statute and in the absence of fraud or some other ground of equity jurisdiction, a Court of Equity has no power to subject the defendant's unassigned right of dower to the payment of her debts. But this conclusion will, we think, be placed beyond doubt by a brief consideration of some of the adjudications of the highest Courts of other States. In the case of *Maxon* v. *Gray*, 14 R. I. 641, which was decided in 1885, the very question now before us was passed upon. That case, like this, was a bill in equity by judgment creditors for a decree for a sale of an unassigned right of dower, and in an able and elaborate opinion the Court came to the conclusion, after reviewing many of the previous cases, that equity had no jurisdiction. To the same effect *Green* v. *Keene, Ib.* 388. In *Cresswell* v. *Smith*, 2 Tenn. Ch. 416, it was held that chancery has no power to reach stocks or things in action, even in the hands of third persons unaffected with fraud or trust without the aid of a statute.

*Keightly* v. *Walls*, 27 Ind. 384 ; *Williams* v. *Reynolds*, 7 Ind. 622. In the case last cited it is said equity will not subject choses in action to the payment of a judgment creditor,. because equity only aids the law, and will, therefore, not interfere, except as to such property as may be sold on execution at law. In the case of *Buford* v. *Buford, supra,* the same view was enforced in the absence of a statute, and in concluding its opinion the Court said, " The bare circumstances of a debt cannot be made the foundation of a bill." The views upon the question of jurisdiction expressed in all these cases are in accord with the rule as laid down by Mr. Adams. " Equity," he says, " does not create new rights which the common law denies, but it gives effective redress for the infringement of existing rights, where by reason of the special circumstances of the case redress at law is inadequate." *Adams Equity*, p. 6 ; *Phelps Juridical Equity*, sec. 158.

The plaintiffs having failed to bring their case within the limits of equity jurisdiction as established and practiced in this State, their bill must be dismissed. " When a creditor," says CHANCELLOR SANFORD in *Donavin* v. *Finn, supra,* " comes into this Court for relief he must come, not merely to obtain a decree or satisfaction of a judgment, but he must present facts which form a case for equity jurisdiction." Such facts the creditors who filed the bill now before us have entirely failed to set forth, and we therefore agree with the learned Court below that the demurrer to the bill was properly sustained and the bill was properly dismissed.

*Decree affirmed.*

(Decided December 3d, 1896).