Dow v. Irwin, 21 N. M. 576.

---

---

[No. 1807, Jan. 12, 1915.]
[On Motion for Rehearing, May 1, 1916.]
## DOW v. IRWIN.

### SYLLABUS BY THE COURT.

1. In the absence of legislative authorization, public policy forbids the garnishment of moneys due the creditors of a county, whether the remedy by which it is sought to reach such funds is denominated legal or equitable.

P. 583

### ON MOTION FOR REHEARING.

2. In civil cases it is a well-recognized rule that questions not advanced on the original hearing will not he considered on the petition for rehearing.

P. 597

Appeal from District Court, Chaves County; J. T. McClure, Judge.

Action by Hiram M. Dow against W. J. Irwin and another. From a judgment for plaintiff, defendant Irwin appeals. Reversed and remanded.

Dow v. Irwin, 21 N. M. 576.

GIBBANY & EPSTEIN of Roswell, for appellant.

Neither equitable garnishment nor suit by way of a creditor's bill is proper to reach funds in hands of municipal corporation.

Art. 8, sec. 126, Ann. Const. N. M.; sec. 26, c. 63, L. 1909; City of Newark v. Funk, R. I. Rev. Stats. 125, sec. 1; Wilson v. Lewis, 10 R. I. 285; sec. 657, c. 1, C. L. 1897; Van Cott v. Pratt et al., 39 Pac. 827; 4 Enc. L. 812; Hawthorne v. St. Louis, 11 Mo. 59; Pengleton v. Perkins, 49 Mo. 565; Geist v. City of St. Louis, 57 S. W. 766; Bank of Tenn. v. Dibrell, 3 Sneed. 383; McMeekin v. State, 4 Eng. (Ark.) 553; Wallace v. Lawyer, 54 Ind. 501, 23 Am. R. 661; City of Newark v. Funk, 15 Ohio St. 462; Chamberlain v. Watters, 37 Pac. 576; Hightower v. Slayton, 21 Am. Dec. 274; State ex rel. Summerfield v. Tyler, 37 L. R. A. 207; Merwin v. Chicago, 92 Am. Dec. 204; Mayor, etc., v. Root, 63 Am. Dec. 692; Buchanan v. Alexander, 4 How. 720; 1 Dillon Mun. Corps., sec. 242; Adyston Pipe and Steel Co. v. Chicago, 44 L. R. A. 405.

TOMLINSON FORT and W. A. DUNN, both of Roswell, for appellee.

After execution of contract to construct bridge, completion of work, acceptance thereof, amount due ascertained merely the relation of debtor and creditor then exists, and there are no grounds of public policy forbidding this sort of a suit.

Plummer et al. v. School District, 90 Ark. 236; c. 26, L. 1915; Riggin v. Hilliard, 35 Am. St. R. 113; Baird v. Rogers, 32 S. W. 630; Clark v. Bert, 42 Pac. 733; Pendleton v. Perkins, 49 Mo. 565; Dickerson v. Johnson, 96 Am. St. 434; Waterbury v. Commissioners, 10 Mont. 515.

The action of the last legislature in repealing the former exemption of public officers from garnishment process indicates advanced views in this state upon the question of public policy.

1 Dill. Mun. Corps. (5th ed.) sec. 249; 6 Pomeroy's
Eq. Juris., sec. 881; Shinn on Att. & Garn., sec. 500;
Mayor v. Horton, 38 N. J. L. 88; Laredo v. Nalle, 65
Tex. 359; Speed v. Brown, 10 B. Mon. (Ky.) 108; Ludes
v. Hood, 29 Kan. 55; Thompson v. Nixon, 3 Edw. (N.
Y.) 568; McCoun v. Dorsheimer, Clark (N. Y.) 144;
Smith v. ————, 4 Edw. 653; Waterbury v. Board
of Commrs., 10 Mont. 515; Kipley v. Shehan, 9 Kan.
App. 885.

## OPINION OF THE COURT.

ROBERTS, C. J.—On the 28th day of July, 1913, E.
S. Mundy recovered a judgment against W. J. Irwin, in
the district court of Chaves county for $1,200. Later
Mundy assigned the judgment to the appellant herein.
An execution upon the judgment was issued and returned
nulla bona by the sheriff of said county. Irwin had a
contract with the county road board of Chaves county for
the erection of a bridge in said county, and, after the
bridge had been fully completed and accepted by said
county, there remained due Irwin, under said contract,
the sum of $4,811.60. Before the amount due had been
paid to Irwin, and after his contract had been completed
and the bridge accepted by the county road board, appel-
lee, Dow, instituted this action to subject said fund to
the payment on his judgment. The complaint set up the
foregoing facts in detail, and alleged that Irwin was in-
solvent; that appellee was without an adequate remedy at
law, by which he could enforce the payment of said judg-
ment. The county road board of Chaves county was
made defendant, and the appellee asked for a decree,
subjecting the moneys due from the county road board to
Irwin, or so much thereof as was necessary to the pay-
ment of appellee's said judgment. The county road board
answered, admitting that it was indebted to Irwin in the
sum named in the complaint, and stated that it was ready
and willing to pay into court the amount of its indebted-
ness to Irwin, or to pay the same to such parties as the
court might order. Appellant also appeared in said ac-
tion, and upon issue framed the cause was submitted to

the court for trial. The court found for appellee, and ordered the county road board to pay into the hands of the clerk of the court, for the use and benefit of appellee, the amount of its judgment and costs of suit. From this judgment appellant appeals.

The controlling question in this case is whether moneys due and owing to a judgment debtor by a county may be subjected, by a court of equity, to the payment of such judgment, where the judgment creditor is without a legal remedy by which he can enforce the payment of the same. Appellee denominates this proceeding as an "equitable garnishment," and cites the following cases and authorities in support of his right to maintain the action: Plummer v. School District, 90 Ark. 236, 118 S. W. 1011, 134 Am. St. Rep. 28, 17 Ann. Cas. 508; Clark v. Bert, 2 Kan. App. 407, 42 Pac. 733; Pendleton v. Perkins, 49 Mo. 565; note by Judge Freeman to case of Dickinson v. Johnson (Ky.) 96 Am. St. Rep. 434; Speed v. Brown, 10 B. Mon. (Ky.) 108; Ludes v. Hood, 29 Kan. 55; Thompson v. Nixon, 3 Edw. Ch. (N. Y.) 457; McCoun v. Dorsheimer, Clark (N. Y.) 144; Smith v. ————, 4 Edw. Ch. (N. Y.) 653; Waterbury v. Board of Com'rs, 10 Mont. 515, 26 Pac. 1002, 24 Am. St. Rep. 67; Kepley v. Sheehan, 9 Kan. App. 885, 61 Pac. 333; Dillon on Municipal Corporations (5th ed.) § 249; Pomeroy's Equity Jurisprudence, vol. 6, § 881; Shinn on Attachment and Garnishment, § 501.

The great majority of the foregoing cases involved the question of the right to reach money in the hands of city and town officials, and whether such cases could be properly considered in point, where it is sought to reach, by equitable proceedings, money owing by a county, might present an interesting question, owing to the distinction which exists between such corporations. Counties are "local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them." Dillon on Municipal Corporations, § 35. In the foregoing section, Judge Dillon

clearly points out the distinction which exists between such corporations. Counties, being but political subdivisions of the state, created by the Legislature for the purpose of aiding in the administration of the affairs of the state, can neither sue nor be sued without legislative sanction. They have only such powers as are granted them by the Legislature. This distinction which exists between strictly municipal corporations and counties does not seem to have been considered in any of the foregoing cases, and it is probably true that a court which would subject moneys in the hands of a municipal corporation to a creditor's bill would also entertain a suit to reach money in the hands of a county or school district. We are not, in this case, however, required to determine the question, as it affects a strictly municipal corporation, and shall therefore pass to the consideration of the question before us.

Appellee concedes that under the statute (section 2546, Code 1915) garnishment will not lie, at law, against a public officer. This section expressly says that "no public officer shall be summoned as garnishee in his official capacity," and because of this express prohibition against proceeding against a public officer under the statute, appellee claims the right to proceed in equity, because of the absence of a legal remedy. Waiving all questions of public policy, which will be ·discussed later, it may be stated that it is very questionable, in the absence of statutory authorization, whether a creditor's bill can reach the choses in action of the judgment debtor, unless the case presents some independent ground of equity jurisdiction, such as fraud, trust, or the like. That it cannot is stated by Mr. Pomeroy (section 877, vol. 6, Pomeroy's Equity Jurisprudence) as the majority rule. One of the leading cases supporting the majority rule is Donavan v. Finn, 1 Hopk. Ch. (N. Y.) 59, 14 Am. Dec. 531. In discussing the question, Chancellor Sanford says:

"According to our distribution of jurisdictions, suits for the recovery of ordinary debts are appropriated to the courts of common law; and the proceedings for enforcing the judg-

Dow v. Irwin, 21 N. M. 576.

ments rendered in such suits are alike allotted to those courts. In any such case, where the subject of the suit is exclusively of legal cognizance, a court of equity has no jurisdition to enforce the judgment, by its own methods of proceeding, or to give a better remedy than the law gives. If the remedies of the law are imperfect, equity, as has been often said in the English Chancery, has no jurisdiction to give execution, in aid of the infirmity of the law. When any fact giving equitable jurisdiction intervenes in the transactions between creditor and debtor, such fact becomes a foundation of relief in this court; but in any ordinary case, free from fraud or injust ce, the execution of the judgment and the methods of compelling satisfaction are confined to the courts of law. When a creditor comes to this court for relief, he must come, not merely to obtain judgment, but he must present facts which form a case of equitable jurisdiction. He must show that the debtor has made some fraudulent disposition of his property, or that the case stands infected with some trust, collusion, or injustice, against which it is the province of this court to give relief. In such cases, this court has jurisdiction, not for the purpose of giving a species of execution, which the courts of law do not afford; but for the purpose of giving relief in the particular cases, alloted to its jurisdiction; and when the cause, by reason of such facts, is properly here, the court proceeds, upon all the circumstances of the case, to give final and equitable relief.

"When, upon an execution, the sheriff returns that no property of the debtor is found in his county, the return is evidence of the fact stated; but neither the return, nor the fact returned, gives any jurisdiction to this court. If the same fact were returned from every county of the state, these remedies at law would be exhausted; but equity would have no jurisdiction upon the mere ground that no property had been found by the sheriffs. But when equity has jurisdiction, by reason of some disposition of the debtor's property, made in fraud of the creditor, and when in such a case the sheriff of the county in which the property is situated returns upon the execution that no property is found, the return is important evidence to show that the fraudulent disposition has had effect, by preventing the service of the execution. By the existing law, the property of a debtor, consisting of things in action, held by him, without fraud, is not subject to the effect of any execution issued against his property; and while a court of law does not reach these things by its execution, a court of equity does not reach them by its execution for the purpose of satisfying either judgments at law or decrees in equity. To subject these things to the satisfaction of a judgment, by seizing and selling them, like goods in possession, would be to alter the established law of the land; and this court has no power to make such an alteration, in the name of equity. The maxims that every right has a remedy, and

that where the law does not give redress, equity will afford relief, however just in theory, are subordinate to positive institutions, and cannot be applied, either to subvert established rules, * * * or to give to this court a jurisdiction hitherto unknown. * * *

"But it is said that a failure of justice must take place if such a jurisdiction should not be exercised by some of our courts of justice. How, it is asked, is all that class of personal effects, consisting of stocks, credits, and property in action, in various forms, a class of property which, in this community, is very great, to be subjected to the payment of debts? That such property should be made subject to the payment of the debts of its owner is not denied. .That such property cannot be seized or sold by the sheriff, upon an execution, is the existing law of the state. That in the present state of our laws, a debtor sometimes holds and enjoys this species of property, while his debts remain unpaid, may be true. These reasons may show that the existing laws are imperfect, and that some convenient method of subjecting this class of property to the payment of debts would be a desirable amendment; but they do not show that this court, or any other tribunal, has power to make such an amendment. The argument, so strongly urged, that justice requires some new remedy in these cases is an argument to be addressed to the Legislature, and not to the courts of either law or equity.

"Our ancient law was not destitute of a remedy in such cases. The law was intended and adapted to compel the application of all the property of the debtor to the discharge of judgments against him; and for that purpose different kinds of executions were proided. By executions against his property in possession, that species of effects was subjected directly to the discharge of a judgment; but his things in action were reached only by an execution against his person, upon which he was imprisoned, until he should satisfy the judgment. The execution against the person was a method of coercion, intended to bring forth, for the satisfaction of the judgment, all such effects of the debtor as could not be subjected to other execution; and it was a powerful remedy. That remedy has been gradually relaxed by the Legislature until it has nearly lost its efficacy; and while this great change respecting execution against the person, has been made, the rules concerning executions against property have remained without alteration. Thus the imprisonment of the debtor as a remedy has been, in effect, taken away, no effectual method of execution against his property in action has been substituted, and this change in our laws has been made by the Legislature itself."

For other cases of similar import, and following the same reasoning, see Harper v. Clayton, 84 Md. 346, 35

Atl. 1083, 35 L. R. A. 211, 57 Am. St. Rep. 407; Greene
v. Keene, 14 R. I. 388, 51 Am. Rep. 400, and see, also,
notes 15 L. R. A. (N. S.) 976; Ann. Cas. 1914B, 956,
where many other cases will be found collected support-
ing the rule, and others to the contrary. See, also, 8 R.
C. L. 14, and 12 Cyc. 27.

As this question was not raised by counsel in the court
below, nor insisted upon in this court, we will not give
further consideration to it, nor base our decision upon
the same, because we are required to reverse the case upon
other grounds.

[1] In the absence of legislative authorization, pub-
lic policy forbids the garnishment of moneys due the
creditors of a county, whether the remedy by which it is
sought to reach such funds is denominated legal or equi-
table. A consideration of the principles underlying this
rule will, we believe, demonstrate the fact that it is sound.
Appellee concedes that, in the absence of a statute clearly
conferring the power, legal garnishment will not lie;
hence this branch of the question need not be further
considered.

Money in the hands of a disbursing officer of the na-
tional or state government cannot be reached by garnish-
ment process or creditor's bill. This proposition is well
settled and uniformly adhered to by all the courts. Bu-
chanan v. Alexander, 4 How. 20, 11 L. Ed. 857, is the
leading case so holding. In that case Mr. Justice Mc-
Lean, speaking for the court, said:

"The important question is whether the money in the
hands of the purser, though due to the seaman for wages.
was attachable. A purser, it would seem, cannot, in this
respect, be distinguished from any other disbursing agent of
the government. If the creditors of these seamen may, by
process of attachment, divert the public money from its
legitimate and appropriate object, the same thing may be
done as regards the pay of our officers and men of the army
and of the navy; and also in every other case where the
public funds may be placed in the hands of an agent for dis-
bursement    To state such a principle is to refute it.    No
government can saction it. At all times it would be found
embarrassing, and under such circumstances it might be
fatal to the public service. The funds of the government

are specifically appropriated to certain national objects, and if such appropriations may be diverted and defeated by state process or otherwise, the functions of the government may be suspended  So long as money remains in the hands of a disbursing officer, it is as much the money of the United States, as if it had not been drawn from the treasury.  Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects."

Applying the same reasoning to the case at bar, it would follow that the money due appellant for constructing the bridge in question, assuming that the funds were on hand in the county treasury to meet the obligation, belonged to the county of Chaves, and not to the county road board of said county, assuming for the sake of argument that such board constituted the disbursing agent of such county in this regard; or, even assuming that the actual money had passed into the hands of the individuals constituting such board, they would only be the disbursing agents of the county, and the funds would belong to the county until they had actually passed into the hands of the creditor, for whom they were intended.  Even so assuming, the natural inquiry is suggested: Why should not such funds be subjected by garnishment or creditor's bill to the payment of the just debts of the county's creditor, where other remedy is not available?  Counties are created by sovereign power for the "purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, or military organization, of the means of travel and transport, and, especially for the general administration of justice."  Dillon on Municipal Corporations, § 35.  Certain officers are provided for, whose duties and powers are defined by law. To these officers are intrusted the local administration of the affairs of the county, with such duties toward the state as the lawmaking power imposes upon them.  With the private affairs of the people, they have no concern, and, as pointed out, such corporations differ materially from private corporations, and even from a "municipal corporation," as that term is used to designate a city or

town.    In the absence of a statute, so authorizing, a county cannot be sued.

Under our statutes, taxes are collected, and a certain portion of the moneys goes into the hands of the county treasurer, and are disbursed upon the orders of the board of county commissioners, or other road boards, for various purposes.    During the course of a year the smallest county contracts many debts, with divers individuals, and upon order of the proper board many thousands of dollars are paid out.    When a contract is made for a bridge, for example, and the same is completed and accepted, and the money due the contractor is paid to him, the contract is fully complied with on both sides and the matter is ended. This concerns the public.    On the other hand, when a private individual comes in and seeks to subject these funds, due a creditor, to the satisfaction of his debts, his private interests in the matter do not concern the public, and the determination of whether he is rightly entitled to the money he claims from the county's creditor is no part of the business of a public officer.    It does not concern the public.    The county unit is concerned only with procuring the services or material and the payment therefor.

But it is argued by appellee, and the argument finds support in some of the cases, that the county officers are put to but little trouble, and certainly common honesty dictates that a man should pay his just debts.    Let us examine briefly the merits of this contention.    The county, or some of its officers, are summoned and required to appear in court and answer as to the county's indebtedness to the individual, whose indebtedness from the county the plaintiff seeks to have applied to the satisfaction of his judgment.    During the course of a year a county has many creditors, and its officers might be required to appear and answer in all the different courts of the state. But it is argued that the district attorney is the legal advisor of the county, and that it would not impose any additional expense upon the county, and not much labor upon that official.    But this argument is faulty, for this

officer would be required, in each case, in order to protect the interests of the county, to determine whether the proceedings were properly brought, whether the court had jurisdiction, and many other similar questions. The present case furnishes a most striking illustration of the necessity for a strict adherence to the rule which precludes the bringing of a creditor's bill against a county. Section 1152, Code 1915, provides:

"In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county of ———.
* * *"

In the case of Phillips County v. Churning, 4 Colo. App. 321, 35 Pac. 318, a suit was brought and judgment obtained against "Phillips county, Colo." Upon a writ of error, sued out by "the board of commissioners of the county of Phillips," the court said:

"'In all suits or proceedings, by or against a county, the name in which the county shall sue or be sued shall be, the board of county commissioners of the county of———— * * *' A county is a political subdivision of the state for governmental purposes, and at common law could neither sue nor be sued. It is only by virtue of statutory enactment that any action can be maintained, either in its behalf, or against it. The right to sue a county being purely statutory, where the mode of instituting the suit is prescribed by statute, it must be strictly followed. Schuyler Co. v. Mercer Co., 4 Gil. (Ill.) 20; Gilman v. Contra Costa Co., 8 Cal. 52, note to same case, 68 Am. Dec. 291; Monroe Co. v. Flynt, 80 Ga. 489 (6 S. E. 173); Rock Island Co. v. Steele, 31 Ill. 543. We have but one statutory provision concerning the manner in which a suit shall be brought against a county. It must be brought against the board of county commissioners of the county sued. That is the corporate name of the county for the purposes of the suit, and there is no authority to sue it by any other name. In this case the statutory requirement having been disregarded, the judgment is a nullity. But the plaintiff in error is 'the board of county commissioners of the county of Phillips.' It was not a party to the proceedings below. It cannot, in any way, be affected by the judgment. The statute provides no method for the enforcement of such a judgment, and neither directly nor remotely is the plaintiff in error interested in it, or in any disposition which might be made of it. The case is therefore improperly in this court, and the writ of error is dismissed."

Dow v. Irwin, 21 N. M. 576.

The present proceedings were instituted, and judgment recovered, against "the county road board of the county of Chaves." We have searched in vain for a statute authorizing a suit against this board. If the decision of the Colorado court is sound (which we are not required to determine), the judgment in the present case would be a nullity, and should the county pay the money into court, as directed by the judgment, it would still be liable to appellant for the full amount due him under his contract, which he could recover by suit. Public policy forbids that officers of a county should be required to litigate such questions, with private parties, with whom they have no concern, and prosecute appeals at the expense of the county to the court of last resort, in order to definitely settle the question of the liability of the county, or incur liability upon their official bonds for the wrongful diversion of county funds. No other or further argument is required to demonstrate the soundness of the rule which relieves counties from all such suits. Our conclusion is amply supported by the authorities. See 6 Pomeroy, Eq. Jur. § 881; The Addyston Pipe & Steel Co. v. City of Chicago, 170 Ill. 580, 48 N. E. 967, 44 L. R. A. 405; Morgan v. Rust, 100 Ga. 346, 28 S. E. page 419: and note to Divine v. Harvie, 18 Am. Dec. 194. In the case of Addyston Pipe Co. v. Chicago, supra, the court said:

"A large and growing city like Chicago must constantly have hundreds of persons in its employment, and if the city cannot, at short intervals, make a settlement of these multitudinous accounts, but is liable to be drawn into court at the suit of every creditor of its numerous employes, it will not only be engaged in much expensive and vexatious litigation in which it has no interest, but, if unable to safely pay its employes and contractors, it may lose the services of persons that may be of much value. * * * A municipal corporation cannot be properly turned into an instrument or agency for the collection of private debts. It exists simply for the public welfare, and cannot be required to consume the time of its officers or the money in its treasury in defending suits, in order that one private individual may the better collect a demand due from another."

Dow v. Irwin, 21 N. M. 576.

"The doctrine announced in Merwin v. City of Chicago (45 Ill. 133, 92 Am. Dec. 204) is fully sustained by the following authorities: Chamberlain v. Gaillard, 26 Ala. 504; City of Memphis v. Laski, 9 Heisk. (Tenn.) 511 (24 Am. Rep. 327); People ex rel. v. Omaha, 2 Neb. 169; Hightower v. Slaton, 54 Ga. 110 (21 Am. Rep. 273); Wallace v. Lawyer, 54 Ind. 508 (23 Am. Rep. 661); School District v. Gage, 39 Mich. 486 (33 Am. Rep. 421); McDougal v. Board of Supervisors, 4 Minn. 189 (Gil 130); Burnham v. City of Fond du Lac, 15 Wis. 194 (82 Am. Dec. 668). The decision of the questions in these cases, as will be found upon examination, is predicated on the ground of public policy, and they fully sustain the doctrine announced by this court.

"If, as we have held, a municipal corporation is not liable to the process of garnishment, upon what ground can a creditor's bill be maintained against a municipal corporation? If it is contrary to public policy to permit the one, upon the same ground and for like reasons must not the other be denied? The process of garnishment and a creditor's bill are, in effect, instituted for the same purpose. They are, as a general rule, instituted to reach money in the hands of a third party due and owing from a judgment debtor to a judgment creditor. A reference to the statute under which the two proceedings are instituted will show their similarity."

For the reasons stated the judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion; and it is so ordered.

PARKER, J., concurs.

HANNA, J. (dissenting.)—Eight assignments of error, raising two questions, are presented for our consideration by appellant's brief. The questions are: First, can the funds in the hands of the county road board due W. J. Irwin as a balance upon his completed contract be reached by creditor's bill in the face of our statute which provides that "No public officer shall be summoned as a garnishee in his official capacity;" and, second, can this statutory provision, if otherwise available to the road board to avoid any liability under such creditor's bill, be waived by it so as to enable the plaintiff to subject such funds due Irwin to the judgment against Irwin assigned to plaintiff, and upon which this suit was based?

Upon the first question thus presented, it is pointed out by appellee that 'the creditor's bill was not brought in the district court until after the contract had been completed, and the work accepted, and the balance due definitely determined and ascertained, upon the theory that those considerations of public policy which are generally asserted by many authorities as reasons why a public corporation should not be subjected to garnishment for wages due an officer in its employ, and which might be held to be broad enough to cover the case of a contractor while in the performance of his contract, would not, in the light of reason and authority, after the completion of a contract and the acceptance thereof, and the ascertainment of the balance due thereunder, prevail as just grounds of objection in an action of this kind to subject the amount of the claim or debt to the demands of a creditor seeking a remedy by way of a creditor's bill, as is attempted in the present suit. The grounds of public policy which have been held to preclude the garnishment of public officers or agencies are, generally speaking, that such officers or agencies should not be subjected to serious interruptions in the prosecution of public business, and to inconvenience and delay in the prompt and efficient discharge of official duties, and the failure in accomplishment of important works and measures, which might result from their subjection to the process of garnishment. This rule has been applied in numerous cases as to municipal corporations, such as cities and towns, and to other public corporations, such as counties and townships, school districts, and school boards and would doubtless have application to a board such as the one here brought before the court if the principle is to be held as applicable in this jurisdiction, where the question is raised for the first time. There is great conflict of opinion among the authorities upon this question, but I am inclined to believe that the better reasoning sustains the contention of appellee, and find support in the following authorities. The first case I desire to refer to is that of Plummer et al. v. School District, 90 Ark. 236, 118 S. W. 1011, 134 Am.

St. Rep. 28, 17 Ann. Cas. 508, where the Supreme Court of Arkansas said:

"In Boone County v. Keck, 31 Ark. 387, this court held that public municipal corporations are not subject to the process of garnishment. * * * This was said in a case where the interests of a county were involved. But the rule and the reason for it are the same in the case of a school district. So that the appellants were remediless at law to have the funds in the hands of the directors applied to the payment of their debts against the contractors. * * * But as the school building has been completed and the purpose consummated for which the fund was raised, the public interest cannot be injuriously affected by further withholding the fund from distribution to those who are justly entitled to it."

In an earlier case the Supreme Court of Arkansas, in the case of Riggin v. Hillard, 56 Ark, 476, 20 S. W. 402, 35 Am. St. Rep. 113, held that:

"A creditor's bill may be sustained to reach money due to the defendant from a county or other municipal corporation not subject to garnishment. If the court can ascertain that no inconvenience will result to the public, it will require the defendant to assign his demand to a receiver to be collected for the benefit of the complainant."

The court, in the latter case, quoting from the opinion, further said:

"But the remedies of equity are not fixed and unbending, like the legal process of garnishment; and if the court can ascertain that no inconvenience can result to the public by its interference with the corporation's right to pay the debt directly to its debtor, there is nothing to prevent the court from doing so."

Again, as pointed out by a Missouri case, the statute in Missouri expressly prohibited the right of garnishment against a municipal corporation, but the Supreme Court of that state held that it did not protect the debt against a creditor's suit in equity to apply it to the payment of his demand. Pendleton v. Perkins, 49 Mo. 565. It is true this Missouri case was one where the broad ground of public policy could not be held to apply because the debtor had absconded, and at the time of the action was

not in any official or business relation with the munici-
pality, and the only objection which could be urged
against the right to maintain that action would be the
one of inconvenience to the public officials brought about
by the necessity of answering the creditor's bill. The
Supreme Court of Missouri held in favor of the right to
maintain the bill in equity in this case, and subsequently
distinguished the case from the later case of Geist v. St.
Louis, 156 Mo. 643, 57 S. W. 766, 79 Am. St. Rep. 545,
which was a case where a judgment had been obtained
against a resident of the state, who was employed in a
municipal office, and after the issuance of execution, which
was returned nulla bona, an effort was made to reach the
salary of the municipal officer by an action in the nature
of an equitable garnishment. In the latter case the court
held that no statute had been enacted providing for a pro-
ceeding of equitable garnishment as distinguished from
ordinary garnishment or trustee process, and denied the
right to maintain the action, declining, however, to over-
rule the former decision in the case of Pendleton v. Per-
kins. In the case cited supra, Riggin v. Hillard, it is
pointed out by the court that the complaint alleged that
the debt was due upon a contract to repair a courthouse,
and the Supreme Court of Arkansas said:

"The courts commonly concur in holding that public policy
forbids any interference between the county and its con-
tractor under such circumstances if the work is still in pro-
gress, for the interference would tend to retard the occupancy
of the building. But here the complaint alleges that the
work has been completed. There is no longer any public in-
terest to be subserved by withholding payment from the con-
tractor, and no reason for withholding the debt from the
reach of the remedy in this sort of proceeding."

This case I think clearly points out the distinction
which can properly be drawn between those cases which
hold against the right to maintain an equitable garnish-
ment against a public corporation and the other cases
which hold in favor of such right, the distinction being
that where the public service or public work can no lon-
ger be interfered with further than from the possible ne-

essity of answering a suit or appearing in court, the objection on the ground of public policy falls, and the creditor should be permitted to maintain his action. To hold otherwise is to follow a principle which permits a debtor to hide behind the so-called public policy rule, and use this rule, which was never designed for his protection, as a means of defeating liability for his judgment debts. When a reason for a rule fails, the rule should have no application. There has been little departure from the general rule followed by most courts that the salary of a public official is not subject to garnishment. The exemption has not been urged for the personal benefit of the officer, but for the protection of the public, and as pointed out by Judge Freeman in the note to Dickinson v. Johnson, 96 Am. St. Rep. at page 446:

"We think the time has come when this question should be re-examined in the light of modern conditions. Society has changed wonderfully since the days when the foundation of the doctrine of exemption of salaries was laid. And if the question should be re-examined, perhaps after all it would be concluded that the public service would not suffer, but would be benefited, by holding officers to the same accountability for their debts that other people are held to."

I cannot but agree with this statement of the change in conditions, and that, as pointed out by Justice Mitchell in the case of Orme v. Kingsley, 73 Minn. 143, 75 N. W. 1123, 72 Am. St. Rep. 614:

"It may be, and probably is, an open question whether, under existing conditions, the immunity of the salaries of public officers from legal process benefits or injures the public service."

In the case at bar, however, we are not called upon to go to the extent of quarreling with the general rule as to the exemption of salaries, but are only called upon to decide whether this general rule should be extended to include an exemption, as in this case, where the debtor is not in the public service, nor in the act of carrying out public work. In fact, he bears no present relation to the municipality other than that of a creditor to whom

a definite and certain sum of money is due, and I cannot see how the public service will be impaired by a requirement that he should account to his judgment debtor for the amount of the debt out of the fund which is now due him from the municipality. It cannot be urged that the public service will be impaired, and can only be said that the officer may be inconvenienced by the necessity of appearing in court. This is something that the municipality might be heard to object to, but that the debtor should not be permitted to urge as any valid reason for the disallowance of the claim against him. A rule which has in recent years met with serious objections and which text-writers are commencing to denominate as unreasonable, is sought in this case to be extended beyond the legitimate reasons for its existence, viz., the public welfare, and the carrying out of public work or service without interference. The tendency would seem to be to restrict the application of this rule, but we are here asked to extend it. As pointed out by Mr. Pomeroy in his work on Equity Jurisprudence, vol. 6, § 881, after stating the general rule with his note thereupon in the following language:

"It has been held that for the same reason a creditor's bill cannot be maintained against a municipality to reach money due its employes and contractors. Other cases established the more reasonable rule that if the court can ascertain that no inconvenience can result to the public in a given case, the suit may be maintained."

This would seem to be the more logical and correct application of not only the general rule, but such exceptions as might be carved out of it. Why the general rule of exemption should apply in those cases where the court can ascertain that no inconvenience will result to the public is beyond comprehension. Mr. Dillon in his work on Municipal Corporations, at vol. 1 (5th ed.) § 249, comments upon the general rule that municipal corporations and their officers have been considered not to be subject to garnishment, and gives as his view that, even where the question is left entirely open by statute, on principle, a municipal corporation is exempt from liability of this

character with respect to its revenues, the salaries of its officers, and perhaps also the wages of its employés, or payments to be made under pending contracts for public works and the like, but where it owes an ordinary debt to a third person not in its service, the mere inconvenience of having to answer as garnishee furnishes no sufficient reason for withdrawing it from the reach of the remedies which the law gives to creditors of natural persons and of private corporations. The tendency, it would seem, has been away from the strict rule of exemptions of a municipal corporation and in Colorado by statute all municipal corporations are subject to garnishment. So, too, in this jurisdiction, at the last session of the Legislature, an act was passed to repeal a former exemption of public officers from garnishment process. Sess. Laws N. M. 1915; c. 26. In Waples on Attachment, at page 232, is to be found an expression in favor of what might be termed the exception to the general rule of exemption of public corporations in the matter of garnishment process in the following language:

"The argument generally employed that such corporations and their officers might be hindered in the discharge of their public duties if liable to be called into the quarrels of litigants to answer to what property or funds they have belonging to an attachment of the defendant, and that they cannot always know what is due such defendant until accounts have been adjusted, may be met by the answer that when it is apparent that a stated sum is due him, or that a distinct article of property belongs to him, it is not very hard for the public corporation or its proper officer to say so, as easy as it is for a private corporation or its proper officer to say so under similar circumstances (not only easy, but a duty when the law requires it, and therefore no hindrance of official duty); and, in answer to the other objection that they cannot always know what is due the defendant until his accounts have been settled, it seems sufficient to say that a response to an interrogatory to that effect would work the discharge of the garnishee."

The entire controversy may be summed up in the following words taken from the note by Judge Freeman relative to contracts for public works, which is to be found in 96 Am. St. Rep. at page 448, where Judge Freeman says:

Dow v. Irwin, 21 N. M. 576.

. "During the performance of a public work, funds set aside for the payment of the contractor cannot be subjected to the payment of his debts, for the completion of the contract might thereby be interfered with; but when the work is finished, there would .seem no sufficient reason, unless perhaps the inconvenience to the city of garnishment or other proceedings, to justify holding exempt any balance due the contractor."

This statement of the principle finds support in the following cases: City of Laredo v. Nalle, 65 Tex. 359; Pringle v. Guild (C. C.) 118 Fed. 655. It is true that the two cases last cited are not in point because in the Texas case there was no statute expressly providing that municipal corporations should be exempt from garnishment, and in the federal case the question of a statute authorizing the garnishment against the municipality or prohibiting the same, was not apparently before the, court, although the general rule was recognized that a municipal corporation cannot be subject to the process of garnishment. The reasoning in each case, however, is applicable to the present case, assuming that the equitable remedy by a creditor's bill is available where there is no adequate remedy at law to accomplish the purpose sought, and I cite these cases, not as precedents, but as supporting the argument which is here urged as the basis for the exception to the general rule. In the Texas case, it was said that:

"The policy of keeping the operations of municipal government free from the interference of lawsuits must yield to the more important policy of securing to the creditors and injured parties payment of their debts and redress for their wrongs, to be enforced by the appropriate process of the law. It is not the policy of the law that the citizen should be wronged rather than that the city government should suffer inconvenience. * * * Public policy may demand that a fund set apart for erecting a public building should not be taken for the debt of the person contracting to do the work during the progress of its construction, for this may prevent . its completion. But when the work is finished and the money earned, and standing to the credit of the contractor with the city, it should be subject, like any other property, to the payment of his debts. No one should be allowed to place his property beyond the reach of his creditors by keeping it in the possession of a municipal corporation,"

For the reasons stated, I dissent from the majority opinion.

## ON MOTION FOR REHEARING.

ROBERTS', C. J.—In his motion for a rehearing in this case appellee sets forth two grounds for the same. The first was that under the pleadings no issue was raised by the parties concerning the right of appellee to maintain the cause of action set forth in the complaint. The second ground is stated in the motion as follows:

"Because it appears from the decree entered by the district court that the appellant, W. J. Irwin, consented that the money in the hands of the county road board, sufficient to satisfy appellee's claim, should be paid into the clerk of the district court of Chaves county, N. M., to await the decision of the Supreme Court in the case of Mundy v. Irwin, 20 N. M. 43, 145 Pac. 1080, the basis of appellee's action in the present case, and by such agreed decree the appellant became bound to apply the sum so paid to the clerk in satisfaction of said judgment in Mundy v. Irwin when affirmed by the Supreme Court, and to pay the same to the appellee in this action (he being the assignee of Mundy), without reference to the question as to whether or not said money, while in the hands of the county road board, was subject to the equtable action of appellee in this case."

The first ground is evidently abandoned by appellee, as it is not argued in his brief filed on rehearing. The second ground is based upon the last paragraph of the decree, from which the appeal was prosecuted. In this decree the court ordered the county road board of Chaves county to pay off and discharge from the funds in its hands due to the appellant, Irwin, the amount which the decree stated was owing by Irwin to Dow, under the judgment rendered in favor of Mundy, and assigned by him to Dow. Further reference to the provisions of the judgment need not be made, as it was in the ordinary form of a judgment in garnishment proceedings, where the garnishee is ordered to pay to the garnishor funds in his hands belonging to a defendant. The last paragraph of the judgment reads as follows:

"It is further ordered by the court by consent of counsel for the plaintiff and the defendant, W. J. Irwin, that a sum

equal to the principal and interest due on the judgment in the case of Mundy v. Irwin, transferred by E. S. Mundy to H. M. Dow, and the basis of the suit in this case, to wit, $1,322.80. together with the costs of this action, shall be by the county road board of Chaves county paid to the clerk of the district court to be by him held pending final judgment in the case of Mundy v. Irwin, now before the Supreme Court of this state, and that such fund be then disposed of by further order of the court."

On the 28th day of December, 1914, when the decree above referred to was signed, the original case of Mundy v. Irwin was pending in this court on appeal. The present suit was instituted for the purpose of enforcing the collection of such judgment, which had not been superseded, and which had been assigned to the appellee, Dow. On the 1st day of February, 1915, the following order was made by the district court:

"Now on this 1st day of February, 1915, it appearing to the court that an appeal has been granted to defendant, W. J. Irwin, from the judgment heretofore on December 28, 1914, in this cause made; it further appearing that said W. J. Irwin has filed a supersedeas bond, which has been approved by the clerk, in the sum required by statute: it is therefore by the court ordered that the sum of money in the clerk's hands, to wit, $1,322.80, be by said clerk paid out to the said W. J. Irwin."

[2] Appellee's contention now is that by the paragraph of the decree above set out, appellant became bound to apply the sum so paid to the clerk in satisfaction of said judgment in the original case of Mundy v. Irwin, when the same was affirmed by the Supreme Court, if such case was affirmed, without reference to the question as to whether or not said money, while in the hands of the county road board, was subject to the equitable action of appellee in this case. No such point, however, was made by appellee upon the original hearing. In his brief filed upon that hearing, in discussing the point, "Is a creditor's bill a proper remedy in this case?" he said:

"Furthermore, as will appear from the last paragraph of the decree, this fund passed out of the hands of the road board and into the hands of the clerk of the district court, as a stakeholder, to await the decision upon his appeal from the plaintiff's judgment, and thus by his consent, its status and its whole character was changed."

Dow v. Irwin, 21 N. M. 576.

"In civil cases it is a well-recognized rule that questions not advanced on the original hearing will not be considered on the petition for a rehearing." 2 R. C. L. 173; Loretto Literary Society v. Garcia, 18 N. M. 318, 136 Pac. 858.

But if we should assume that the question was here for consideration, a sufficient answer to appellee's contention would be that the district court did not so construe the paragraph in question, for, upon appellant's execution of a supersedeas bond, an order was entered, directing the clerk to pay the fund to appellant. Evidently the only object in view, by both parties, and the court, in entering the paragraph of the decree in question was to first hold the proceedings in statu quo until this court should decide the original case; and, second, to enable the court, after this court had decided that case, to make an appropriate order relative to such fund. Thus, if appellant did not appeal from the final decree in this case and file a supersedeas bond within 60 days, the court would have been warranted in ordering the fund paid over to appellee. When appellant procured the order allowing him an appeal and filed a supersedeas bond, the court awarded the fund to him, because appellee was amply protected by such bond, in case he prevailed here. Appellee's present contention was evidently an afterthought; for, if he is right in his present position, his remedy would have been to have applied to the district court for an order, directing the clerk to pay the funds in his hands to his client, when this court affirmed the original case. Again, he should have objected to the order of the court, ordering such fund paid over to the appellant, when the supersedeas bond was filed, for such order was violative of his present understanding as to the effect of the consent paragraph of the decree. The action of the trial court and the conduct of the parties all tend to show that the decree was not intended to have the effect which appellee now ascribes to it.

For the reasons stated, the former opinion will be adhered to, and it is so ordered.

HANNA and PARKER, J.J., concur.